## Richmond.

MOSES V. OLD DOMINION IRON AND NAIL WORKS COMPANY.

December 9.

Absent, *Moncure,* P.

M leased to the Old Dominion Iron and Nail Works Company a warehouse for three years. A covenant by M was that if the building should be so damaged by fire or other cause as to render it untenantable the lease should be void; and the lessees covenanted that they would leave the premises in good repair, ordinary wear and tear excepted. The lessees took possession of the warehouse and stored therein a large quantity of iron and nails, and during a severe storm the western portion of the building, including all the floors and the roof, fell down. M claimed that the Company were liable for the damages, and this the Company denied; and M, with the assent of the Company, repaired the building, and the Company took possession and held as tenants under the lease. M then sued the Company on the case for the damages done to the building. HELD:

1. It was competent for M to sue in an action on the case.

2. Wherever the injury to leased premises is permanent, the lessor or reversioner may have an action on the case; and it is not for the tenant to say that an action of covenant may be maintained against him for the same cause; for the lessor may have at his option either remedy.

3. The action on the case may be brought pending the lease; and the action will not be prevented by the covenant of the lessee to leave the premises in good repair.

4. The measure of the lessee's liability is not what the lessor may think proper to expend, but what is necessarily expended in restoring the property to its former condition, or such sum as will be sufficient to compensate the lessor for the damage and loss sustained by the injury to the property.

This was an action on the case in the circuit court of the city of Richmond, brought by Alfred Moses against The Old Dominion Iron and Nail Works Company, to recover damages for injury to a house of which the defendant was tenant of the plaintiff. Upon the trial there was a verdict and judgment for the defendant, and a writ of error to this court. The case is fully stated by Judge *Staples* in his opinion.

*Keiley*, for the appellant.

*Wood Boulden, Jr., F. W. Christian* and *H. H. Marshall*, for the appellee.

STAPLES, J., delivered the opinion of the court.

This is an action of trespass on the case, brought in the circuit court of Richmond by Alfred Moses against the "Old Dominion Iron and Nail Works Company."

The history of the controversy, briefly stated, is as follows:

In December, 1875, the plaintiff leased to the defendants a warehouse in the city of Richmond, for the term of three years, commencing the 1st of January, 1876, at the rent of five thousand four hundred dollars. It was one of the provisions of the lease that if the building should be so damaged by fire or other cause as to render it untenantable the lease should be void. The defendants on their part covenanted that they would leave the property in good repair, ordinary wear and tear excepted. The defendants took possession of the premises on the 1st of January, 1876, and proceeded to store therein iron and nails in large quantities. On the 29th of March, 1876, the western portion of the building, including the floors and the roofs, fell down, carrying several hundred tons of iron—the walls, however, with the exception of a small proportion, remaining intact.

Shortly after the occurrence, the plaintiff proposed to the defendants to submit to arbitration the question of their liability for the damage to the building, and he further proposed in the meantime to go on and put it in complete repair, that as little delay and loss as possible might be occasioned in the use of the premises. The defendants declined the proposition to arbitrate, denying they were in any manner responsible for the damage. But they made no objection to the plan of repairing the premises as suggested by the plaintiff. The latter thereupon proceeded at once to make the repairs to the building at an expense of $2,654; the defendants employing the architect to advise with in respect to the plan of the work. The plaintiff, however, protesting throughout that he did not mean to waive his right of recovery against the defendants for compensation for the damage he had sustained.

Upon the completion of the work the defendants resumed possession of the premises, paying therefor the agreed rent except for the two months during which the building was undergoing the repairs.

In September, 1876, the plaintiff instituted his suit to recover damages sustained by him arising from the injury to the building. Upon the trial in the court below he introduced testimony tending to show that the injury resulted from the misconduct of the defendants in overloading the building above its safe capacity, and its fall was due to this cause.

On the other hand, the defendants offered evidence tending to show that the building was not loaded up to the safe capacity of such a warehouse if properly planned and constructed; and that its fall was attributable not to overloading, but to defect in construction. The evidence being concluded, the plaintiff asked for the following instructions:

The jury are instructed that notwithstanding the clause in

the lease providing that the lease should be void on the building becoming so damaged by fire or other accident, as to render it untenantable, such avoidance could not follow at the option of the tenant if the fire or other accident was caused by the negligence or misfeasance of the said tenant. Which instruction the court refused to give; and the plaintiff excepted. The first point to be considered is, whether this ruling of the court is correct.

It will be perceived the only proposition affirmed by the instruction is, that the defendants could not at their option avoid the lease if the accident to the building was occasioned by their negligence, notwithstanding there was a provision in the lease it should be void if the building became so damaged as to become untenantable. It is difficult to see what the plaintiff expected to gain by affirming the validity or the continuance of the lease. The action was not for the rent, but for the recovery of damages occasioned by the alleged misconduct of the defendant in overloading the building.

The right of the plaintiff to maintain his action and to recover damages could not be at all affected by the continuance or discontinuance of the lease. And if the circuit court had given the instruction, it would not have aided the jury in deciding the question submitted to them. However correct, therefore, the instruction may be as an abstract proposition of law, it had no relevancy to the issue involved, and the circuit court committed no error in refusing it. And if the learned judge had stopped there the plaintiff could have had no just ground of complaint.

But the court went further, and of its own accord gave the following instruction:

"If the jury shall believe from the evidence that the plaintiff, after the accident, with a full knowledge of all the circumstances, entered upon the premises, and with the consent of the defendants, but with their disclaimer at the

time and at all times thereafter of any responsibility for the accident, employed at his own expense agents and workmen to repair the damages to the building and to put it in such condition as would prevent the defendants from claiming any right to abandon the premises and to declare the lease determined, although before commencing the work and throughout its progress he protested to the defendants that he was under no legal obligation to make such repairs, and reserved the right to claim compensation therefor from the defendants; and the jury shall further believe that after the completion of the work by the plaintiff the defendants accepted the building, and the relation of landlord and tenant under the original lease has by mutual consent ever since subsisted, the jury are instructed that the plaintiff cannot in this action recover from the defendants any portion of the expense incurred by him in making such repairs."

It will be observed that the instruction does not affirm that the plaintiff is without remedy for the supposed injury, but that upon the case as stated by the learned judge he is not entitled to recover in the present form of action.

The counsel for the defendants in his argument here insisted that if the plaintiff has any remedy at all it is by action on the covenant, and not in case. This proposition is not sustained by the authorities. Wherever the injury committed by the tenant is of a permanent character, the lessor or reversioner may have an action on the case, and it is no answer for the tenant to say that an action of covenant may also be maintained against him for the same cause; for the lessor may have at his option either remedy. "There seems to be no doubt," says Mr. Minor, "that in case of agreement not to do waste, the landlord has his election, where waste is committed, to bring either case for the waste, or the appropriate action for the breach of the agreement. If by the special agreement the landlord

acquires a new remedy, he does not therefore lose that which he had before." 2 Minor's Inst. 1st edi. p. 633. In this he is supported by numerous authorities. I shall content myself with referring to some of them. Taylor's Landlord and Tenant, § 688; Cooley on Torts, 335; 2 Chitty's Plead. new ed. 936, note; *Dickenson* v. *Mayor of Baltimore,* 48 Maryl. R. 583; 4 Kent. 81, note.

One of the leading cases on that subject is that of *Kinlyside* v. *Thornton,* 2 W. Black. R. 1111, 1113. There the lease was for twenty-one years, and the lessee covenanted to yield up the premises in good repair at the end of the term. The lessee during the term committed waste, for which the lessor brought an action in the case against him. It was objected to in the trial that the plaintiff ought to have brought covenant and not case. A verdict was found for the plaintiff subject to that point. The court of common pleas was clearly of opinion that an action on the case was maintainable as well as covenant. Had there been no deed of covenant an action of waste, or case in the nature of waste, would have lain; because the landlord by his covenant acquires a new remedy, he does not thereby lose his old. These authorities seem to be decisive of the question.

It has been said, however, that at all events the action will not lie until after the expiration of the lease, because the defendants' covenant is simply to leave the premises in good repair. He has, therefore, the whole term to make such repairs, and *non constat,* but that he may make them, and thus save the breech.

This position is equally untenable with the other, both upon principle and authority. The operation and effect of the covenant to repair are well understood. It extends not only to ordinary and gradual decay of the premises, but also accidental injuries by fire and tempest. So that under this covenant the lessee is bound to repair even when the damage to the inheritance is produced by causes over which

he has no control. I speak, of course, with reference to the doctrines of the common law, for the rule has been changed by statute, which provides that no covenant or promise by the lessee that he will leave the premises in good repair shall have the effect, if the buildings are destroyed by fire or otherwise, without *fault or negligence on his part*, of binding him to erect buildings again, unless there be other words showing it to be the intention of the parties that he should be so bound. Code 1873, chap. 113, § 19.

Whilst, therefore, at common law the tenant was liable for waste from accidental causes, it was only where there was an agreement to repair. In all such cases the only remedy was by suit on the covenant. Where, however, the tenant is guilty of voluntary waste, where by his act injury is done to the reversioner, then the lessor may bring his action during the lease, even though the tenant may have it in his power to restore the premises to their original state before its expiration. The case of the *Provost, &c. of Queen's College* v. *Hallett*, 14 East. R. 489, is a leading case on this subject. There the action was for an injury to the inheritance. It was objected that as the lease had not expired the action would not lie, because before the expiration of the tenant's lease he might restore the premises to their former condition. Lord Ellenborourgh, with whom the other judges concurred, said the act of the tenant is an injury to the title of the reversioners, and *a present damage to them;* and that Lord Mansfield had held that building a wall where none was before was sufficient to entitle the reversioner to this kind of action, although it might be pulled down before the lease expired. See also *Jesser* v. *Gifford*, 4 Burr. R. 2141; 1st Addison on Torts, 421.

This doctrine is founded on good sense and sound reason. If, as in the present case, the injury to the estate is of a permanent character, and the landlord cannot repair, and the tenant will not, both are deprived of the use of the

property. Should the landlord desire to sell, the marketable value of the property is so effected he cannot do so except at a sacrifice. When the lease is a long one—ten or twenty years—the deterioration becomes all the greater, and the expense of repairing but the more burdensome to bear.

If the landlord is compelled to wait the expiration of the term before he can sue, he must of course run all the risks of the tentant's continued solvency, and of the loss of evidence by the death or absence of witnesses. And all this loss and inconvenience are to be borne, because perchance the tenant may conclude to repair the property during the term, in the face of his declaration that he will not repair, and of his express denial of all liability for the injury to the estate. If the tenant refuses to repair the premises, he cannot complain that the landlord does so. He is therefore restored to his former occupation, where as he might have been compelled to pay the rent without the use and enjoyment. If by his negligence, or misfeasance, the property has been materially injured, he ought at once to make good the loss by repairing it, or by indemnifying the landlord for the expense he has necessarily incurred in making such repairs.

It has been said, however, the lessee ought not to be held to answer for all the fanciful or extravagant outlays the lessor may chose to make in repairing the buildings.

That is very true. The measure of the lessee's liability is not what the lessor may think proper to expend, but what is necessarily expended in restoring the property to its former condition, or perhaps such sum as will be sufficient to compensate the lessor for the damage and loss sustained by the injury to the property.

These are matters of calculation, to be made by the jury upon the testimony of witnesses. In what has been said, no opinion is expressed, or intended to be expressed with

respect to the matters in controversy here. Whether the injury to the building was caused by the negligence or misconduct of the defendants, as charged in the declaration, or was owing to a defect in the construction, as claimed by the defendants, was a matter exclusively for the jury under the supervision of the court.

The instruction given by the circuit judge manifestly proceeded upon the idea that the plaintiff having repaired the buildings with a view to prevent an abandonment of the premises by the defendants, and the relation of landlord and tenant being thus restored by mutual consent, the plaintiff could not, during the term, recover damages for the loss, although the injury was caused by the misconduct of the defendants, and although the repairs were made with their consent. The instruction being in conflict with the views herein expressed, the judgment must be reversed, the verdict set aside, and a new trial awarded, upon which trial the circuit court, if required, will instruct the jury in conformity with the views herein expressed.

The judgment was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the circuit court did not err in refusing to give to the jury the instruction asked for by the plaintiff in error.

The court is further of opinion that the said circuit court did err in giving the instruction given to the jury and set out in the bill of exceptions of the said plaintiff in error. Wherefore, for the error aforesaid, it is considered by the court that the judgment of the said circuit court be reversed and annulled, and that the defendants in error do pay to the

plaintiff in error his costs by him expended in the prosecution of his writ of error and *supersedeas* aforesaid here. And this court, proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that the verdict of the jury be set aside and a new trial awarded.

JUDGMENT REVERSED.