# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Richmond Ice Co. v. Crystal Ice Co.

### January 26, 1905.

1. Evidence—*Admissibility—Specific Objections.*—Where specific objections to the reception of evidence are properly overruled, it cannot be thereafter assigned as error that the evidence was objectionable for other reasons.

2. Trial—*Argument of Counsel—Remarks of Judge.*—Where there is some evidence tending to prove a material point in a cause, it is a legitimate subject of argument, although the court may have excluded other evidence on the same point; and the statement of the trial judge, in the presence of the jury, that he had improperly rejected the excluded evidence, without then admitting it, could not have prejudiced the other party.

3. Landlord & Tenant—*Ordinary Repairs.*—Under the terms of the contract in suit it was the duty of the tenant to make ordinary repairs to the leased premises, that is, such repairs as would have to be made to correct wear and tear.

4. Landlord & Tenant—*Destruction of Buildings—Abatement of Rent—Common Law Rule—Statute—What Tenant Must Prove—Negative Evidence.*—At common law, where there was an express contract to pay rent, no reduction of rent was allowed on account of the destruction of buildings on the leased premises, but, by statute, in this State, where the buildings are destroyed without fault or negligence on the part of the tenant, it is provided that there shall be a reasonable reduction of the rent, for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed. To come within this statute, the burden is on the tenant to show, first, that the destruction was without his fault or negligence, and, second, that the value of the leased premises for his purposes was diminished. It is immaterial that the tenant has to prove a negative as the existence of these facts is necessary to the relief asked.

5. VERDICTS—*Conflicting Evidence.*—Where the evidence on a material point in a case is conflicting, the verdict of the jury will not be disturbed by this court.

6. LANDLORD & TENANT—*Destruction of Buildings—"Tenant's Purposes"—Abatement of Rent—Verdicts.*—The verdict of a jury, refusing to allow a tenant compensation for the loss of the use of buildings in consequence of the destruction of a wharf on the leased premises, will not be disturbed where it appears that the premises were leased to get rid of a rival in business; that they were not in use at the time of the destruction of the wharf, and had not been in use for a year or two prior to that time, and were not used thereafter because the tenant could make more money by not using them. It was for the jury to say whether "for the tenant's purposes" the leased premises were diminished in value by the destruction of the wharf.

Error to a judgment of the Circuit Court of the city of Richmond, in an action of debt, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

The opinion states the case.

*S. S. P. Patteson*, for the plaintiff in error.

*Leake & Carter*, for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This is the second time this case has been before this court. Upon the former writ of error (*Richmond Ice Co. v. Crystal Ice Co.*, 99 Va. 239), after disposing of certain questions of pleading and practice, it was held that the liability of the tenant, the plaintiff in error, to pay the rent stipulated for in the contract sued on, was limited by the terms of section 2455 of the Code, which allows a reduction of the rent where buildings

are partially destroyed, without the fault or negligence of the tenant, and the action was remanded for a new trial.

When the case went back to the Circuit Court, the tenant, The Richmond Ice Company (plaintiff in error), filed a special plea of set-off, in which, after setting out the lease, it averred that after leasing the premises in the declaration mentioned, a substantial portion of the buildings and structures used in connection therewith were demolished or destroyed, without fault or negligence on its part, by the action of ice, or an ice gorge, in James river, on which the premises were located, so that since the buildings were destroyed there have not been on the premises buildings of as much value to the tenant for its purposes as those which were so destroyed, by reason of which the leased premises are worth at least the sum of $80 per month less than they were before such destruction, and this sum, which amounts to $800, it offers to set-off against the plaintiff company's demand.

Upon the trial of the cause there was a verdict and judgment for the plaintiff. To that judgment this writ of error was awarded.

The first error assigned is that the court erred in permitting the questions set out in Bill of Exceptions No. 2, to be answered by one of the defendant's witnesses (its general manager) on cross-examination.

The questions and answers objected to are as follows:

"Q. Were not you and the Crystal Ice Company engaged in business together at the time you made this lease?

"A. Interested in the same company; yes, sir.

"Q. And was not the purchase of this property from Warner Moore made by the Crystal Ice Company in consequence of a suggestion coming from you, or from your company, that it would be well to get Warner Moore out of business?

"A. I cannot answer positively about that. I know there

were negotiations going on in the formation of the Mutual Ice Delivery Company by Mr. Wingfield and myself. The first suggestion of the formation of the Mutual Ice Delivery Company came from Mr. Wingfield. Of course I was willing to go into it, and I did. The object of the purchase of the property was to get Warner Moore out of the way."

The only objection made to this evidence was "that the lease is in writing and its terms contain all of the agreements made by the parties," and that it cannot be contradicted, added to, or varied by parol evidence.

The questions to which objection was made do not refer to the contents of the lease, and the answers do not contradict, add to or vary its terms in any manner. This being the only objection made to the evidence, it was properly overruled, even if the evidence had been objectionable on other grounds, as it clearly was not under the issue in this case.

The next error assigned is based upon Bill of Exceptions No. 3, which is as follows, leaving off the formal parts:

"Q. How did your company come to buy this property?

"A. The property in dispute?

"Q. Yes, sir.

"A. On June 4, 1895, I was approached by Mr. Landerkin, who represented the Richmond Ice Company, and he said that Warner Moore & Co. had been a disturbing element in the ice business previous to that, and in the coal business also, by reason of his being a cutter of rates, which demoralized trade, and if we, who were interested in the ice business, would buy out the real estate of Warner Moore & Co., on which he had an option, they would guarantee to pay us interest at six *per cent.* on the investment in rental of the property, which question and the answer thereto were at the time objected to by counsel for the defendant, and the objection sustained. But during the progress of the argument of the case, when plain-

tiff's counsel was making his closing argument, and while he was stating to the jury that the purpose for which the premises were rented was to get Warner Moore & Co. out of the ice business as a competitor, objection was made by counsel for defendant to this line of argument on the ground that this question, when asked by plaintiff of witness, Wingfield, on his examination, had been ruled out as improper, and the counsel for plaintiff said he was arguing on the evidence of Mr. Landerkin, the court overruled this objection, and said in the presence of the jury that if its attention had been called to the statute, the objection of defendant to this question asked by plaintiff of Wingfield would not have been sustained, and permitted the counsel to continue his argument on that line. To this action of the court the defendant, by counsel, then and there objected and excepted."

There was evidence in the case tending to show for what purpose the premises were rented, and as that question was a material one in ascertaining what reduction in the rent, if any, the tenant was entitled to, as will be hereafter shown in considering the motion to set aside the verdict, counsel had the right to argue it. The statement of the court, in the presence of the jury, that it had improperly rejected evidence offered by the landlord, which it did not then admit, could not, so far as we can see, have prejudiced the tenant. The court did not err, therefore, in overruling the objection.

The landlord asked for three and the tenant for two instructions. The court rejected all of them, and gave two instructions of its own. The refusal of the court to give the tenant's instructions and the giving of its own in lieu thereof is assigned as error.

Upon the former writ of error it was contended by the landlord that the covenant in the lease by the tenant, "to keep the plant and buildings in repair during the term of this lease,"

was not covered by section 2455 of the Code, but was controlled by the common law rule, and bound the defendant to rebuild and pay the rent without any abatement. But this court said, in disposing of that contention, that, taking the lease as a whole, "it seems clear that the intention of the parties was that the repairs to be made by the lessee during the lease were only the ordinary repairs indicated by the particular description used, such as broken glass, bursting water-pipes, etc. It follows from what has been said that the liability of the lessee to pay rent provided for by the contract is prescribed and limited by the terms of section 2455 of the Code, which must be given full force and effect in determining the rights of the parties."

Section 2455 of the Code is as follows:

"No covenant or promise by a lessee to pay the rent, or that he will leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or erect such buildings again, unless there be other words showing it to be the intent of the parties that he should be so bound. But in case of such destruction, there shall be a reasonable reduction of the rent, for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and in case of such deprivation of possession, a like reduction until possession of the premises be restored to him."

There was evidence tending to show that if the tenant had made ordinary repairs on the wharf, that is, such repairs as would have to be made to correct wear and tear, it would not have been destroyed by the ice gorge.

It was clearly the duty of the tenant to make that kind of re-

pairs under the terms of the lease as construed by the court on the former writ of error.

Whether or not the wharf was destroyed without fault or negligence on the part of the tenant was one of the questions to be passed upon by the jury, yet the tenant, in its instruction No. 2, erroneously assumed that it owed no such duty. By its instruction No. 1, the tenant asked the court to tell the jury that if, upon the facts hypothetically stated, it was entitled to a reduction of the rent, the plaintiff could only recover what the leased premises are reasonably worth generally, without the use of such buildings and structures, whereas the amount which a tenant is entitled to have the rent reduced under the statute is the diminished value of the leased premises "to the tenant for his purposes," caused by such destruction. For that reason the tenant's instruction No. 1 was erroneous.

The instructions given by the court are as follows:

(1) "The jury are instructed that they should find for the plaintiff any unpaid amount of the sum of one hundred dollars, stipulated in the lease as a monthly rent, and may allow interest on any such monthly installment from the time said monthly rent was due, unless they shall believe from all the evidence that the value to the defendant of the premises for its purpose was diminished without any fault or negligence of the defendant by reason of destruction of any building or structure on the premises by the ice or ice gorge set out in the defendant's special plea, in which event the jury should allow the defendant such abatement of the stipulated rent as they may believe from all the evidence to be a reasonable reduction of the rent on account of such destruction; but if the jury shall believe from the evidence that the injuries to the leased premises caused by said ice gorge spoken of herein were caused by the fault or negligence of the defendant, or that the premises were not ren-

dered less valuable to the defendant thereby, they should make no reduction in the said rent on that account."

(2) "If the jury believe from all the evidence that any of the buildings or structures upon the leased premises were destroyed without fault or negligence of the defendant by the ice or ice gorge in defendant's plea set out, and were not before the bringing of this suit replaced in whole or in part, and that in consequence thereof the value of the premises to the defendant for its purposes was diminished, they are instructed that the defendant should be allowed a reasonable abatement therefor, and the plaintiff is only entitled to recover the agreed rent of $100 per month, less a reasonable estimate for defendant's damages occasioned by such destruction of buildings or structures."

These instructions cured the defects pointed out in the rejected instructions offered by the tenant, and fairly and fully instructed the jury upon the law as applicable to the evidence in the case.

The next and remaining assignment of error is to the refusal of the court to set aside the verdict on the ground that it was contrary to the law and the evidence.

The jury allowed no reduction of rent, although it was clearly proved that there had been a destruction of the wharf and some structures on or connected therewith. At common law, where there was an express agreement to pay rent, as in this case, there could be no reduction of the rent on account of the destruction of the buildings on the leased premises. One of the reasons for that rule was that such liability was requisite to stimulate the tenant to the proper care of the premises, and to guard against frauds which the landlord is often not in a condition to establish. 2 Minor's Inst. 60, and cases cited.

Section 2455 of the Code modifies the common law rule so as to allow a reduction of the rent on account of the destruction of buildings where they were destroyed without fault or negli-

gence on the part of the tenant. It is not sufficient to entitle him to a reduction in the rent, that the buildings on the leased premises have been destroyed, but it is made a condition to that right that they were destroyed without fault or negligence on his part.

It was, therefore, necessary for the tenant in its pleadings to aver (as it does), and prove that fact. That it was required to prove a negative does not affect the question since the existence of that fact was necessary to the relief sought. 1 Greenleaf on Ev., ss. 78, 81; 1 Taylor on Ev., ss. 364 to 366. See also *Reusens* v. *Lawson,* 91 Va. 226, 253, 21 S. E. 347, and authorities cited.

Upon the question of whether or not the wharf was destroyed without fault or negligence on the part of the tenant, the evidence is conflicting, and of such a character that a verdict in favor of the landlord on that point could not be disturbed by the court.

In order to maintain the issue on the part of the tenant, it was not only necessary for it to prove that the wharf had been destroyed without fault or negligence on its part, but that the value of the leased premises for its purposes was thereby diminished. The object for which the premises in question were leased, the use (or rather the non-use) made of them by the tenant before, at the time of, and subsequent to the destruction of the wharf, clearly appear from the evidence of the manager of the tenant company, one of its own witnesses. Upon his cross-examination, among other things, that witness testified as follows:

"Q. So that, for going on two years, you had not used this property at all?

"A. No, sir.

"Q. At the time the accident happened it had not been of any use to you at all?

"A. I was not using it, but it was a help to us.

"Q. In what respect?

"A. Because no one else could use it, being in the business; that is the reason the place was bought in the first instance by the Crystal Ice Company, to get some one else out.  .  .  .  .

"Q. Was not the inducement offered by your company to the Crystal Ice Company, that if they would buy this property you would pay them a rent equal to six *per cent. per annum* on what it cost them?

"A. Yes, sir.   There was three thousand tons of ice there.  .  .  .    The arrangement was that the Crystal Company would buy the property from Mr. Moore at a cost of $16,500, I think, and that the Richmond Ice Company would buy the ice on hand, the coal he had on hand, his horses and wagons, in fact, all of his personal property, and in addition lease the property from the Crystal Ice Company for ten years for $1,200 a year.

"Q. And that was done to get Warner Moore out of business?

"A. There was three thousand tons of ice there.   There is no question about the lease.   We rented the property for ten years, and paid the rent for forty-three months.

"Q. And you say that before the flood, before the property was injured, you had not used the property for nearly two years?

"A. Do you know why?

"Q. Will you tell me?

"A. Because when we bought the property we were handling Kennebec river ice to furnish our quota to the Mutual.   After handling northern ice for, I think, two years, Mr. Wingfield having a surplus at his factory, I made a contract with him.   I figured I could better afford to pay rent and take ice from him and do away with northern ice.

"Q. You had no further use for the property?

"A. No, I paid rent until the gorge.

"Q. So for two years before the gorge you had no use for this property and did not use it?

"A. Exactly.

"Q. How did the gorge hurt you?

"A. It hurt me by preventing me from disposing of it to anybody else.

"Q. Did you try to dispose of it?

"A. No.

"Q. It seems you had two opportunities to dispose of it?

"A. Yes.

"Q. You had two opportunities to dispose of it after the gorge and did not think it prudent to do so?

"A. No, because I thought I had better pay the rent and have the management of it. . . . . . .

"Q. And although you had an offer twice after this thing happened, once at $600 and once at $700, you decided not to take it?

"A. No, sir.

"Q. And you had not been using the property for two years, about two years before the ice gorge?

"A. For good business reasons I did not. I thought I could make more money by not using it."

From this evidence and other evidence, it appears that the object of the tenant in making the lease was to get rid of a rival in business, and to stop the use of the premises for the purposes for which they were constructed; that they were not in use when the wharf was destroyed; that they had not been in use for more than one year, perhaps as much as two years, prior to that time, and that they were not used afterwards during the period in which the rent accrued which is sought to be recovered in this action, and the reason given is that the tenant could make more money by not using them.

Under the facts and circumstances disclosed by the record, the jury were warranted in reaching the conclusion that the value of the leased premises for the tenant's purposes had not been diminished during the period in which the rent demanded accrued, and that it was, therefore, not entitled to any reduction in the rent.

Upon the whole case, we are of opinion that there is no error in the judgment of the Circuit Court, and that it must be affirmed.

*Affirmed.*