Syllabus.

# Richmond.

## VAUGHAN V. MAYO MILLING COMPANY.

March 18, 1920.

Absent, Burks, J.

1. NEW TRIALS—*Policy of the Law.*—Under a sound public policy, the law accords to every litigant one fair and regular trial, but only one.

2. NEW TRIALS—*Appellate Court.*—As a general rule a stronger case must be made in order to justify an appellate court in disturbing an order granting a new trial than where a new trial has been refused; the reason usually assigned for this rule being that the refusal to grant a new trial operates a final adjudication of the rights of the parties, while the granting of a new trial simply invites further investigation.

3. NEW TRIALS—*Appellate Court—New Trial Granted for Error in Instructions.*—But where the trial court has expressly confined its action in granting a new trial to error in the instructions, its action in granting a new trial on this ground will not be sustained by the appellate court, if in fact there was no error in the instructions.

4. LANDLORD AND TENANT—*Covenant to Leave in Good Repair—Destruction of Property—Common Law—Code of 1919, Sec. 5180.*—At common law a covenant to pay the rent and leave the premises in good repair, natural wear and tear excepted, imposes upon the tenant, in the absence of a stipulation to the contrary, the duty of paying the rent and rebuilding the structures on the leased premises even though they be destroyed without fault on his part. But this rule of the common law has been changed by statute in Virginia (Code of 1919, sec. 5180), and the rule now is that, if the buildings are destroyed without fault or negligence of the tenant, he is not bound to rebuild or pay rent unless there are other words in the covenant showing that the tenant should be so bound.

5. LANDLORD AND TENANT—*Covenant to Leave in Good Repair—Code of 1919, Sec. 5180—Burden of Proof.*—Under section 5180, Code of 1919, the burden of proof is upon a tenant, who has covenanted to leave the premises in good repair, of prov-

ing that the collapse of the building upon the premises leased was not due to his fault or negligence in an action by the landlord seeking to recover rent and an amount equal to the cost of replacing the building.

6. PLEADING—*Negativing Exceptions—Secs. 5179, 5180, Code of 1919.* —Where there is an exception incorporated in a general clause, whether it be in a statute or in a private contract, unless that exception in such general clause be negative in pleading the clause, no offense or cause of action will appear in the indictment or declaration when compared with the statute or contract; but, when the exception or provision is in a subsequent substantive clause, the case contemplated in the enacting or general clause may be fully stated without negativing the exception or proviso, as a *prima facie* case is stated; and it is for the party who relies upon the matter of excuse or defense furnished by the statute or contract to bring it forward in his defense. Section 5180 of the Code of 1919 constitutes an exception to section 5179 of the Code of 1919 and imposes upon the party relying on it the burden of proof.

7. LANDLORD AND TENANT—*Covenants—Parol Warranty.*—In an action by a landlord against his tenant for rent and for the cost of replacing a building destroyed on the premises, an alleged parol warranty by the landlord of the strength of the building, which antedated the written lease, could not be relied on to defeat plaintiff's recovery.

8. LANDLORD AND TENANT—*Covenants—Parol Warranty—Failure to Object to Admission of Parol Evidence.*—In an action by a landlord against his tenant for rent and for the cost of replacing a building destroyed on the premises, the court instructed the jury that defendant had the right to rely on statements made by the landlord to the tenant prior to the lease as to the strength of the building.

    *Held:* That the landlord could not object to this instruction, where the evidence on which the instruction rested was not objected to at the time it was offered, or at any other time before the judgment was rendered.

9. PAROL EVIDENCE—*Waiver of Right to Object—Appeal and Error.* —When a party who is entitled to the benefit of the rule prohibiting the admission of parol evidence to vary or contradict a writing waives the benefit thereof by allowing such evidence to be received without objection and without any effort to have it stricken from the minutes or disregarded by the trial court, he cannot, after the trial has closed and the case has been decided against him, invoke the rule in order to secure a reversal of the judgment by an appellate court.

10. INSTRUCTIONS—*Conflict—Liability of Lessee Where Building is*

*Destroyed.*—In an action by a landlord against his tenant for rent and for the cost of replacing a building destroyed on the premises, an instruction basing defendant's non-liability on the fact that he did not overload the building is not in conflict with an instruction basing defendant's nonliability upon the fact that if he did overload the building he did so because of a warranty as to the strength of the building given by the landlord. In either of these events the loss was "not due to the fault or negligence" of the defendant, but in both aspects of the case the burden was on the defendant, and in neither aspect can it be said that there was any conflict between these two instructions, or that the jury could have failed to understand them.

11. LANDLORD AND TENANT—*Destruction of Building—Action by Landlord Against Tenant—Measure of Damages.*—In an action by a landlord against his tenant for rent and for the cost of replacing a building destroyed on the premises, the measure of damages is the cost of replacing upon the premises a building of equal size, character, and construction, deducting therefrom a proper and just amount for the age and depreciation of the destroyed building and any amount which the lessee received or should have received from the sale of salvaged material, less the expense of salvaging it.

12. DAMAGES—*Actions for Tort—Actions for Covenant—Destruction of Property.*—In an action for tort for the destruction of property, the measure of damages is the value of the property destroyed, and not the cost of replacing the same, but in an action for breach of contract to do a specific thing, namely, to pay a certain amount of rent and to leave the premises in good repair, the measure of damages for breach is the reasonable cost of putting the premises in the required condition.

13. EVIDENCE—*Destruction of Building—Cost of Reconstruction.*—Even in actions of tort for the wrongful destruction of property, evidence as to the cost of replacing the building is admissible as tending to prove the value of the property destroyed. In the absence of other evidence of value, and without objection from the defendant as to the sufficiency of such evidence, it would seem that proof of the cost of replacing the building would warrant the jury in finding the damage accordingly.

Error to a judgment of the Circuit Court of city of Richmond, in a proceeding by motion for a judgment for damages. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Leake & Buford* and *C. V. Meredith,* for the plaintiff in error.

*Smith & Gordon,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

Emma Lee Vaughan, being the owner of a four story and basement brick building in the city of Richmond, leased the same as a factory and storage plant to the Mayo Milling Company for one year from October 1, 1915, at an agreed rental of $2,000. The lease was under seal and contained a covenant to pay the rent and "to leave the premises in good repair, natural wear and tear excepted." Possession was given at once, and the lessee proceeded to store in the building large quantities of grain. On the 21st day of October, 1915, the building collapsed, resulting in a complete destruction thereof and considerable damage to the contents.

Each party claimed that the other was responsible for the loss. The lessor, after the expiration of the term, brought a motion for judgment against the lessee based upon the covenants to pay the rent and to leave the premises in repair, seeking to recover the year's rent and an amount equal to the cost of replacing a building similar in size and character, less an allowance for depreciation, the aggregate amount claimed being $28,642.90. The lessee entered a general denial, and also a special defense alleging that the collapse was due to structural weakness known to the plaintiff but unknown to the defendant, and setting up a counterclaim of $6,771.54 for loss and damage.

There were three trials of the case. At the first, the jury failed to agree; at the second, there was a verdict in favor

of the plaintiff for $17,314.37, which the court set aside for alleged error in the instructions; at the third, there was a verdict against the plaintiff and for the defendant in the sum of $595.63, and judgment was entered accordingly. This writ of error brings under review the action of the court, (1) in setting aside the first verdict, and (2) in rendering judgment on the second verdict.

[1-3]  Each of the trials occupied more than a week, and at each many witnesses were examined, and the testimony was voluminous and in many respects conflicting. The record before us (which omits, of course, the evidence taken at the first trial, but contains sufficient general reference thereto to indicate that it was much the same as on the other two) comprises nearly 1,200 printed pages. Nothing profitable would be accomplished by any attempted recital of the evidence. Suffice it to say that at each trial the respective theories of the parties were supported by sufficient evidence to have warranted a verdict in favor of either. This is our view of the case after a careful study of the record, aided by exceedingly full and clear oral arguments and printed briefs of counsel. This was manifestly also the view of the learned judge below, who set aside the verdict on the second trial for what he conceived to be errors in the instructions, and expressly held that he did so on that ground alone, although the motion before him challenged the sufficiency of the evidence to sustain a verdict for the plaintiff. That verdict was rendered by a special jury of twelve, ordered upon motion of the defendant, and upon a view of the premises had upon motion of the plaintiff, and they reached a conclusion which, however we ourselves might have viewed the evidence, we cannot disturb unless there was some error in law. Under a sound public policy, the law accords to every litigant one fair and regular trial, but only one. We do not overlook the fact that as a general rule a stronger case must be made in order to

justify an appellate court in disturbing an order granting
a new trial than where a new trial has been refused, the
reason usually assigned for this rule being that the refusal
to grant a new trial operates a final adjudication of the
rights of the parties, while the granting of a new trial
simply invites further investigation. We applied this rule
in *Trauerman* v. *Oliver's Adm'r*, 125 Va. 458, 99 S. E. 647,
and that, too, was a case in which the court in setting aside
the verdict based its decision upon the instructions. In
the *Trauerman Case*, however, not only were the alleged
errors in the instructions of such a character as to neces-
sarily involve the same principle as if the court had set
aside the verdict for insufficient evidence, but it was further
true that the errors as alleged had clearly been committed.
It is obvious that we cannot carry the rule in question far
enough to apply it in a case where the trial court has ex-
pressly confined its action to the instructions, unless we
find that it has in fact committed error in that respect.

This brings us to a consideration of the instructions in
the instant case.

1. The trial court was of opinion that it had erred in
giving instruction No. 4 for the plaintiff, and instruction
No. 11 for the defendant, not because it considered either of
these instructions wrong in itself, but because it thought
the former defective in directing a verdict for the plaintiff
without embodying a certain view of the evidence upon
which the defendant would have been exempt from liability.
Whether the court was right in this conclusion can best
be determined by considering these two instructions sepa-
rately and then making the comparison. This course, too,
will enable us to dispose of a cross-assignment of error
by the defendant essentially involving the correctness of
Instruction No. 4, and an incidental attack by the plaintiff
upon the correctness of Instruction No. 11.

Instruction No. 4, given for the plaintiff, was as follows:

20

"The court instructs the jury that they must, under the terms of the lease, find for the plaintiff, unless they believe the defendant has proved by the greater weight of the evidence that the collapse of the building was not caused by its fault or negligence. The jury are instructed that in considering any defense offered in this case for the purpose of showing that the house collapsed without fault or negligence on the part of the defendant, the burden is on the defendant to prove such defense by the greater weight of the evidence."

This is a correct statement of law, and notwithstanding the attack upon it by the defendant, the court gave it again at the third trial.

[4] It is well settled, and not disputed here, that at common law a covenant to pay the rent and leave the premises in good repair, natural wear and tear excepted, imposes upon the tenant, in the absence of a stipulation to the contrary, the duty of paying the rent and rebuilding the structures on the leased premises even though they be destroyed without fault on his part. 2 Min. Inst. (4th ed.), 923; 1 Min. Real Prop., sec. 416; *Ross* v. *Overton,* 3 Call (7 Va.) 309, 319, 2 Am. Dec. 552; *Scott's Ex'x* v. *Scott,* 18 Gratt. (59 Va.) 167, 168; *Moses* v. *Old Dom. Iron and Nail Works,* 75 Va. 95, 100; *Richmond Ice Co.* v. *Crystal Ice Co.,* 99 Va. 239, 243-4, 37 S. E. 851; *Idem.* 103 Va. 465, 472, 49 S. E. 650.

This rule of the common law was long since changed by statute in Virginia, and the law now is that "no covenant or promise by the lessee to pay the rent, or that he will keep or leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise, in whole or in part, without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or repair or erect such buildings again, unless there be other

words showing it to be the intention of the parties that he should be so bound." (Code, 1919, sec. 5180.)

[5]   The defendant contends that Instruction No. 4, erroneously placed upon it the burden of proving that the collapse of the building was not due to fault or negligence upon its part, and argues that for this reason, as well as for the reasons assigned by the trial judge, the verdict should have been set aside.   The question thus arising has been settled adversely to the contention of the defendant by the decision of this court in the case of *Richmond Ice Co.* v. *Crystal Ice Co.*, 103 Va. 465, 473, 49 S. E. 650, 652.   That was a case in which the plaintiff, by an action brought before the end of the term, was seeking to recover a balance of rent, and the defendant filed a special plea of setoff. In the course of the opinion Judge Buchanan said: "At common law, where there was an express agreement to pay rent, as in this case, there could be no reduction of the rent on account of the destruction of the buildings on the leased premises.   One of the reasons for that rule was that such liability was requisite to stimulate the tenant to the proper care of the premises, and to guard against frauds which the landlord is often not in a condition to establish.   2 Minor's Inst. 60, and cases cited.

"Section 2455 of the Code (Code, 1919, sec. 5180) modifies the common law rule so as to allow a reduction of the rent on account of the destruction of buildings where they were destroyed without fault or negligence on the part of the tenant.   It is not sufficient to entitle him to a reduction in the rent that the buildings on the leased premises have been destroyed, but it is made a condition to that right that they were destroyed without fault or negligence on his part.

"It was, therefore, necessary for the tenant in its pleadings to aver (as it does) and prove that fact.   That it was required to prove a negative does not affect the question since the existence of that fact was necessary to the relief

sought.   1 Greenleaf on Ev., ss. 78, 81; 1 Taylor on Ev., ss. 364 to 366.   See also *Reusens* v. *Lawson,* 91 Va. 226, 253, 21 S. E. 347, and authorities cited."

[6] An effort is made to show that the *Ice Company Case* cited above is not in point as authority here, the argument being that the language of the opinion there used was with reference to the affirmative plea set up by the defendant under which it had to prove the negative matter introduced into the covenants of the lease under section 5180, and could have no reference to an action in which the plaintiff was seeking affirmatively in his pleading to give effect to those covenants.   We do not think, however, that any substantial difference exists in principle between that case and the one at bar.   If there could be any question as to the meaning of the clear and strong statement of Judge Buchanan, it would be set at rest by the authorities to which he refers, one of which was *Reusens* v. *Lawson,* 91 Va., the reference being to page 253 of that report (21 S. E. 355), and the pertinent language there used being as follows: "One of the rules of pleading is that where there is an exception incorporated in the general clause, whether it be a statute or in a private contract, unless that exception in such general clause be negatived in pleading the clause, no offense or cause of action will appear in the indictment or declaration when compared with the statute or contract; but, when the exception or provision is in a subsequent substantive clause, the case contemplated in the enacting or general clause may be fully stated without negativing the exception or proviso, as a *prima facie* case is stated; and it is for the party who relies upon the matter of excuse or defense furnished by the statute or contract to bring it forward in his defense.   *United States* v. *Cook,* 17 Wall. 168-173 [21 L. Ed. 538]; *Land Grant Co.* v. *Dawson,* 151 U. S. 586-604 [14 Sup. Ct. 458, 38 L. Ed. 279].   This is not always a rule of pleading, but is sometimes a rule of evi-

dence. *Land Grant Co.* v. *Dawson, supra; Osburn* v. *Lowell,* 36 Mich. 246-250 (Judge Cooley)." We are of opinion that the authority here quoted, when applied to sections 5179 and 5180 of the Code, must be construed to mean that the latter section constitutes an exception to the former and imposes upon the party relying on it the burden of proof. Section 5179 declares that, subject to the qualification in section 5180, a covenant to "leave the premises in good repair" shall have "the same effect as a covenant that the devised premises will at the expiration or other sooner determination of the term, be peaceably surrendered and yielded up to the lessor, his representatives or assigns, in good and substantial repair and condition, reasonable wear and tear excepted." Section 5180 is a subsequent substantive enactment, providing for a defense which must be set up and proved; and this was the clear effect of the holding in *Richmond Ice Co.* v. *Crystal Ice Co., supra.* It follows, therefore, that the trial court was right in giving Instruction 4 on the second trial and in adhering to it on the third trial.

Instruction No. 11, given for the defendant, was as follows: "The court instructs the jury that the defendant had a right to rely on the statement made to Messrs. Mayo and Selden by Mr. Vaughan as to the character and strength of the building in the absence of any actual knowledge on the part of the defendant that the building was subject to any structural defects; provided the jury shall believe from the evidence that such words were used by said Vaughan as a warranty of the strength of the building, and so relied on by the lessee and were not used as mere words of commendation and praise, and if the jury believe from the evidence that there was such a warranty and that the warranty was not true, then the jury cannot allow any damages to the plaintiff, but must find for the defendant against the plaintiff, and assess its damages at the amount claimed in the plea of setoff, less the sum of $578.62."

This instruction was based upon the testimony of the defendant's witnesses, George D. Mayo, president, and W. T. Selden, vice-president, of the Milling Company, who had stated that when looking over the building before making the lease I. N. Vaughan, the agent of the lessee, represented that it was unusually strong, that the first floor was unusually well built, and that they could run a railroad train through it if they desired to load one there. Vaughan in his testimony admitted that he had recommended the building as being good and strong, but denied any recollection of and said he did not think he made any statement with reference to running a railroad train through it, and his testimony tended very strongly to show that in any event his statements were not intended as a warranty, but merely as commendatory of the leased premises.

[7-9]  The plaintiff, while denying that there is any conflict between Instructions 4 and 11, insists that if such conflict were conceded, the defendant could not complain because the latter instruction is erroneous and ought not to have been given at all, the point made against it being that the alleged warranty was by parol, antedated the written lease, and could not, therefore, be used to defeat the plaintiff's recovery.  A strong and convincing array of authorities is cited in support of the legal proposition on which this argument is based.  See 1 Tiffany Landlord & Tenant, 559-60, sec. 86-b; *Naumberg* v. *Young,* 44 N. J. L. 331, 334, et seq., 43 Am. Rep. 380; *Stevens* v. *Pierce,* 151 Mass. 207, 208-9, 23 N. E. 1006; *Dutton* v. *Gerrish,* 9 Cush. (Mass.) 89, 92, 94, 55 Am. Dec. 45; *Wilcox* v. *Cate & Bunher,* 65 Vt. 478, 26 Atl. 1105; *York* v. *Steward,* 21 Mont. 515, 55 Pac. 29, 43 L. R. A. 125; and the long line of Virginia cases in accord, though not so directly in point as the foregoing, of which *Towner* v. *Lucas,* 13 Gratt. (54 Va.) 705, and *Slaughter* v. *Smither,* 97 Va. 202, 33 S. E. 544, are conspicuous types.  The argument, however, is fatally

defective because the evidence on which the instruction rested was not objected to at the time it was offered, or at any other time before the judgment was rendered.

"When a party who is entitled to the benefit of the rule prohibiting the admission of parol evidence to vary or contradict a writing waives the benefit thereof by allowing such evidence to be received without objection and without any effort to have it stricken from the minutes or disregarded by the trial court, he cannot, after the trial has closed and the case has been decided against him, invoke the rule in order to secure a reversal of the judgment by an appellate court."    17 Cyc. 752.

In *Newberry* v. *Watts*, 116 Va. 730, 736, 82 S. E. 703, 705, Judge Buchanan, speaking for the court, said:    "The general rule is that the failure to object or otherwise raise the question of the admissibility of evidence on the trial is a waiver of all objection thereto.    If secondary evidence is admitted without objection, instead of primary, or a witness incompetent because of the death of the other party to the contract or transaction is permitted to testify without objection, the jury must consider and give due weight to such evidence.    The same rule would seem to apply to hearsay evidence.    See *Damon* v. *Carroll*, 163 Mass. 404 40 N. E. 185; Elliott on Ev., secs. 330, 881, and cases cited in notes.

"Rules of law exclude much evidence which is of a character to satisfy a jury of some fact in issue, because it belongs to a class of evidence which experience has taught is more liable to mislead than to aid in the ascertainment of truth.    But if a litigant sits by and permits evidence to go to the jury which the court, if it had been objected to, would have excluded, the jury have the right and it is their duty to consider it along with all the evidence and give it such weight as they think it is entitled to.    They may or may not believe it, but so far as they do or do not their judgment is not controlled by rules of law."

We think, therefore, that the instruction was in itself proper. It may be observed that the question does not arise in this form upon the third trial because at that trial the evidence was objected to and the court excluded it as tending to show a warranty, but permitted it to go to the jury on the question of negligence. The defendant got the benefit of it in its strongest possible aspect at the second trial, but in the state of the record on that trial the plaintiff is in no position to say that the evidence was inadmissible, and the instruction, therefore, erroneous.

[10] We are, however, further of opinion that there was no conflict between the two instructions in question. They were harmonious. The first sentence of No. 4 covers the whole case from the defendant's standpoint. If the defendant proved that it did not overload the building, a verdict in its favor had to follow under Instruction No. 4; if it proved that it did overload the building, but did so because of a warranty as to the strength of the building, a like verdict had to follow under this instruction. In either of these events the loss was "not due to the fault or negligence" of the defendant, but in both aspects of the case the burden was on the defendant, and in neither aspect can it be said that there was any conflict between these two instructions, or that the jury could have failed to understand them.

[11] 2. The other ground upon which the court set aside the verdict at the second trial was that it had erred in giving the plaintiff's Instruction No. 14 with reference to the measure of damages. That instruction was as follows:

"If your verdict be for the plaintiff, you should fix her damages at——

"1st. The rent reserved in said lease, namely, $2,000.00, with interest upon each monthly instalment thereof, from the date the same became due and payable according to the terms of said lease.

"2nd. The cost of replacing upon the lot a building of equal size, character and construction, deducting therefrom a proper and just amount for the age and depreciation of the destroyed building, and any amount which the plaintiff has received or should receive from the sale of the material salvaged from the building less such expense as the plaintiff has been put to in producing such salvage."

[12] It was the view of the trial court that this instruction stated an incorrect rule for measuring damages in an action of this character, and the case of *C. & O. Ry. Co.* v. *May,* 120 Va. 790, 92 S. E. 801, is cited as showing that the true rule is the value of the property destroyed, and not the cost of replacing the same. The case cited follows the rule for the measure of damages in actions for tort which is generally approved in this State and elsewhere, but this is an action for breach of covenant to do a specific thing, namely, to pay a certain amont of rent and to leave the premises in good repair. By a long and practically unbroken line of authority the rule for the measure of damages for breach of a covenant of this character is substantially as stated in instruction No. 14 quoted above.

In *Watriss* v. *Bank,* 130 Mass. 343, 345, the court, per Gray, C. J., said: "As a general rule, the measure of damages for the breach of a lessee's covenant to keep in repair, and to surrender the demised premises at the end of the term in as good order and condition as they are in at the beginning of it, is the sum it would cost to repair the premises and put them in the condition they ought to be in. In the time of Lord Holt, this was the rule even in an action brought before the expiration of the lease. * * *

"According to later cases, when the lessor sues on the covenant to repair, pending the lease, and so before he is entitled to possession of the premises, the damages may perhaps be limited to the diminution in the market value of his estate. * * * But when the action is brought after the

21

end of the term, the measure of damages is still held to be such a sum as will put the premises in the condition in which the tenant is bound to leave them."

In the note to *Boardman* v. *Howard*, 64 L. R. A. 665, it is said: "While several rules have been advocated for the measure of the damages in actions for breach of covenants to leave premises in any specified condition, the one upon which the great majority of the decisions has settled as the proper one is that the lessee is liable to the extent of the amount required to do what he covenanted to do, but did not do."

Again, in a note to *Appleton* v. *Marx* (N. Y.), 16 L. R. A. (N. S.) 210, it is said: "As is there shown (64 L. R. A. 665, supra), the great majority of the decisions hold the proper rule to be that the tenant is liable to the extent of the amount required to do what he covenanted to do, but did not do. This, it will be observed, is the rule laid down in *Appleton* v. *Marx* (the principal case), and is also followed by the recent cases involving the question."

The rule is stated thus in 18 Am. & Eng. Ency. L. (2d ed.), p. 256: "Where the action is brought after the expiration of the term, the measure of damages is the cost of putting the premises in the required state of repair, even though the repairs have not been made by the landlord and he does not intend to make them."

In 24 Cyc. 1098, it is said: "In an action by the lessor on a breach of covenant to repair brought before the expiration of the lease, the measure of damages to which the lessor is entitled is not the cost of repairing, but the injury done to the reversion. However, where such action is brought after the end of term, the measure of damages is held to be such sum as will put the premises in the condition in which the tenant is bound by his covenant to leave them."

In 3 Sutherland on Damages (3d ed.), sec. 858, p. 2558,

the author says: "As has been already incidentally mentioned, if a tenant bound to repair, or under a covenant to leave and deliver up in repair, leaves the premises at the end of his tenancy in a state of dilapidation, he is liable in damages for what it will reasonably cost to put them in the state in which he was bound to leave them."

To the same effect is the text in 16 Ruling Case Law, p. 1094, section 612, where it is said: "In an action for the breach of a tenant's covenant to keep the premises in repair, brought after the expiration of the term, the plaintiff's measure of damages is the cost of putting the demised premises into the state of repair contemplated by the broken covenant."

The rule stated in Tiffany on Landlord & Tenant, sec. 118-g, p. 783-4, was as follows: "The measure of damages for breach of a covenant by the lessee to leave in repair or in the same condition as at the time of the demise is, at least as a general rule, the reasonable cost of putting the premises in the required condition."

There appears to be no case directly in point in Virginia; but the multitude of cases cited in the texts above quoted show that the rule as stated therein is established by the overwhelming weight of judicial decision.

The case of *Moses* v. *Old Dominion Iron and Nail Works,* *supra,* was one in which the action was brought before the end of the term to recover damages for overloading a building and causing it to fall. The action there was in case and not in covenant, but the court held that the landlord (who on the lessee's refusal to make the repairs had made them himself) might bring his action in either form, and might sue before the end of the term, and then proceeded to say: "It has been said, however, that the lessee ought not to be held to answer for all the fanciful or extravagant outlays the lessor may choose to make in repairing the buildings. That is very true. The measure of the lessee's

liability is not what the lessor may think proper to expend, but what is necessarily expended in restoring the property to its former condition, or perhaps such sum as will be sufficient to compensate the lessor for the damage and loss sustained by the injury to the property."

It thus appears that Judge Staples, who rendered the opinion of the court in that case, was inclined to the view adopted in some of the older decisions, that *even in actions brought before the end of the term*, the measure of damages was the cost of making the repairs rather than the damage to the value of the property. There can be no doubt that he would have approved the former as the rule if the action had been brought after the end of the term.

[13] Throughout the second trial the plaintiff's evidence to prove damages was addressed to the question of the cost of replacing the building, and there was no objection or suggestion that this was not proper. Even in actions of tort for the wrongful destruction of property, evidence of this character is admissible as tending to prove the value of the property destroyed. In the absence of other evidence of value, and without objection from the defendant as to the sufficiency of such evidence, it would seem that proof of the cost of replacing the buildings would warrant the jury in fixing the damage accordingly. However this may be, we are of opinion that as an independent proposition Instruction 14 was correct. It simply required the defendant to do what its covenant demanded, and made due allowance for depreciation and salvage, so as not to require the substitution of a new for an old building.

The view which we have taken as to the burden of proof, as fixed by plaintiff's Instruction 4, disposes of the defendant's cross-assignment of error to the action of the trial court in overruling a demurrer to the notice. There were certain other cross-assignments relating to the other instructions in the case. These have all been considered and

are deemed without merit. The important and decisive questions are those which we have already discussed.

We are of opinion that the court erred in setting aside the verdict at the second trial, and we will, therefore, enter here the order which we think should have been entered below, awarding judgment to the plaintiff for the amount of the verdict and the costs of this appeal.

*Reversed.*