Leon H. Marcy, as Receiver and Trustee in Bankruptcy of Syracuse Reduction and Manufacturing Company, Respondent, *v.* City of Syracuse, Appellant.

Fourth Department, December 20, 1921.

Landlord and tenant — municipal corporations — garbage reduction plant leased to city by order of Federal court — covenant that city would make all necessary repairs and replacements and keep plant in as good condition as at time of lease — plant destroyed by explosion of digester — action to recover damages for breach of contract — explosion due to negligence of city — Real Property Law, § 227, not defense — notice of claim arising out of breach of contract not required to be served under Second Class Cities Law, § 244 — said section applies to claims arising out of torts and not to action for breach of contract — Second Class Cities Law, § 64, not applicable and is in harmony with § 244 — proof of negligence by defendant did not change nature of action — " necessary repairs " defined — " replacements " defined — measure of damages is value of plant at time of leasing less value of scrap and not cost of new replacements — cost of cleaning premises not part of damages where scrap sold on premises — costs not in discretion of court in action at law.

In an action to recover for a breach of covenants in a lease it appeared that the plaintiff, as receiver in bankruptcy, acting in pursuance of an order of the Federal court authorizing him to lease the garbage reduction

plant of the bankrupt to the defendant, which order provided that the lessee should make all the necessary repairs and replacements to the plant and keep the same in as good condition as at present, executed a lease with the defendant whereby the defendant covenanted to make " all necessary repairs and replacements " and " to keep the plant of the party of the first part in as good condition as at present." During the possession of the defendant a digester exploded wrecking the entire plant. The defendant interposed the defense that the plant was so destroyed or injured by the elements or other cause, namely, by a sudden explosion of one of the digesters upon said premises, as to be untenantable and unfit for occupancy and for the use for which said premises were leased, and that such explosion and destruction resulting therefrom occurred without any fault or neglect upon the part of the defendant, its agents or officers.

*Held,* on all the evidence, that the defendant failed to show that the explosion occurred without its fault or negligence, but on the contrary the explosion of the digester was occasioned by the neglect of the defendant to properly inspect and repair it, and to operate the plant in a proper and careful manner.

The injury to the plant having been caused by the negligence of the defendant, section 227 of the Real Property Law is not a defense to the action.

The defendant having interposed the defense that the plant was not destroyed through its negligence, the plaintiff had the right to show that the defendant was not free from fault but instead was entirely negligent, but in doing so the plaintiff's cause of action, which was one upon contract pure and simple, was not changed to one brought upon a tort based upon wrongful acts, negligence or misfeasance.

The provision of section 244 of the Second Class Cities Law requiring the service of a notice of claim upon the city is applicable only to cases where damages are claimed for injuries to person or property as a result of the tortious acts of the city or its agents and, therefore, the plaintiff was not required, in this action for breach of contract, to serve a notice of claim under that section.

Section 64 of the Second Class Cities Law contains no provision with reference to actions based upon claims, which are controlled by section 244, and said sections should be construed to be in harmony with each other.

The plaintiff had the right to maintain an action based upon the covenants in the lease by waiving the tort of the defendant, and, by bringing the action upon the lease and the covenants contained therein, he, in effect, waived his right to maintain an action based upon the tort.

The covenants in the lease to make " all necessary repairs and replacements," and " to keep the plant of the party of the first part in as good condition as at present," should be construed together, and as so construed " necessary repairs " means such ordinary repairs as are necessary for the tenant to make in order to carry on the business contemplated in the lease, and " replacements " contemplates the replacing of those portions and parts that have become destroyed.

The plaintiff is entitled to recover as damages the value of the plant at the time of the leasing, less the value of what remained after the explosion, and not the total cost of replacement.

The plaintiff is not entitled to recover as a part of his damages the cost of cleaning up the premises after the explosion and after he had retaken possession, since it appears that he sold the scrap or wreckage upon the premises and such wreckage was subsequently removed by the purchaser.

This action is one at law and not in equity and, therefore, the amount of the costs does not lie in the discretion of the court.

APPEAL by the defendant, City of Syracuse, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 11th day of November, 1920, upon the report of a referee appointed on stipulation of the parties to hear and determine the issues.

*Edmund H. Lewis* [*Merwin W. Lay* with him on the brief], for the appellant.

*Henry R. Follett*, for the respondent.

Judgment affirmed, with costs, upon the opinion of Hon. ALBERT HAIGHT, referee.

All concur.

The following is the opinion of the referee:

HAIGHT, Referee:

The complaint in this action alleges three causes of action against defendant. The first cause is based upon a lease to the defendant by the plaintiff of a garbage reduction plant, pursuant to an order of the United States District Court of the Northern District of New York, containing covenants which it is alleged the defendant has failed to perform, and that the plaintiff has suffered damages in consequence of such failure. The covenant in the lease which it is alleged the defendant has broken provides as follows:

" The party of the first part does hereby let and the party of the second part does hereby take all the real property, buildings, plant, machinery, horses, wagons, tools and equipment belonging to said alleged bankrupt and situate in the City of Syracuse, New York, at a monthly rental of $225.00, payable monthly for a term commencing November 12, 1917,

and ending on June 30, 1918, upon the following terms and conditions, to wit:

" The party of the second part, in addition to the aforesaid rental, agrees to operate the plant of the party of the first part and to pay all operating expenses, all necessary repairs and replacements and all insurance premiums for fire insurance on said plant and buildings upon a *pro rata* monthly basis on a total insurance not to exceed $70,000. The party of the second part further agrees to keep the plant of the party of the first part in as good condition as at present."

The claim of the plaintiff is that the aforementioned covenants were not kept by the defendant, but that on the expiration of the terms of the lease the buildings, equipment and machinery had been practically destroyed and were a heap of ruins. The cause of action, therefore, was based upon a breach of a contract and was to recover the damages which the plaintiff had sustained in consequence thereof.

The second cause of action was for the balance of rent due; the third for the balance of insurance premiums which the plaintiff had been compelled to pay.

The answer interposed by the defendant, as amended, is to the effect that on or about the 20th day of March, 1918, the leasehold premises mentioned and described in the complaint were destroyed or so injured by the elements, or other cause, viz., by a sudden explosion of one of the digesters upon said premises, as to be untenantable and unfit for occupancy and for the use for which said premises were leased, and that such explosion and destruction or injury resulting therefrom occurred without any fault or neglect upon the part of the defendant, its agents or officers.

Upon the trial it appeared that the plant was out of repair and that a considerable expenditure would be necessary in order to make necessary repairs for its operation, and that the defendant was so advised before executing the lease. It further appeared that after the defendant entered into possession of the leasehold premises it made repairs, the cost of which amounted to $5,693.34, but that it did not inspect or repair digester No. 3, which in the following March exploded, wrecking the building, appliances and machinery. It also appeared that the digester No. 3, which was formerly con-

structed of one-half-inch boiler plate, at points near the surface of the cooking garbage became worn, eaten by acids and materially reduced in thickness; that certain portions of the wall of said digester No. 3 were at the time of said explosion reduced to a thickness of between sixty-three one-thousandths of an inch to ninety one-thousandths of an inch; that at least one of the rivets in said digester was worn, eaten with acid and loose, and that said digester was not in a proper and safe condition for use as such under the pressure of steam ordinarily used therein.

It also appeared from the testimony that such condition could have been ascertained by inspection of the inside of the digester with the use of a hammer. It further appeared from the testimony that during the process of cooking the garbage it was the practice to open the valve at the top of the digester periodically to relieve it from the pressure of steam inside, and that it did not appear that on the day of the explosion such opening had been made, or that it had even cracked by a slight opening which was permitted to remain during the process of cooking.

I, therefore, believe myself bound by the evidence to find as a fact that the defendant has failed to show that the explosion occurred without fault or negligence on its part, and to find that the explosion in and damages to said plant and premises heretofore referred to were occasioned by the neglect of the defendant to properly inspect and repair digester No. 3 and to operate the said plant in a proper and careful manner.

If I am correct in making the above-mentioned findings, it disposes of the defendant's defense interposed under the Real Property Law, section 227 (Laws of 1909, chap. 52), which provides that " Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred *without his fault or neglect*, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

This statute, which was copied from the Laws of 1860, chapter 345, was designed to afford relief to tenants in buildings upon leasehold estates which had been destroyed by the elements or otherwise without fault or negligence on the part of the tenant, thus relieving the tenant from the rigors of the common law, but it only applied to cases where the destruction or injury occured *without fault or negligence on* the part of the tenant. (*Butler* v. *Kidder,* 87 N. Y. 98.)

It thus becomes unnecessary to consider the question as to whether the defendant surrendered up possession of the premises and buildings within a reasonable time after they had been destroyed.

The next question which becomes necessary to determine is whether the plaintiff can maintain this action under the charter of the city of Syracuse. I have, at the request of the defendant, found in my report the provisions of the charter, being a portion of section 250 of chapter 26 of the Laws of 1885, as amended by chapter 682 of the Laws of 1905, and also provisions of section 244 of the Second Class Cities Law. They are substantially the same with perhaps the change of a single word and the omission or insertion of a comma, neither of which changes my views with reference to the meaning of the charter. I have found in my report that the charter provided by the Second Class Cities Law is in force in the city of Syracuse, and I shall, therefore, consider that statute in determining its meaning. The first sentence of section 244 of the Second Class Cities Law makes provision with reference to the maintaining of an action against the city for damages or injuries to *person or property* sustained in consequence of any street, highway, bridge, culvert, sidewalk or crosswalk being defective, out of repair, unsafe, dangerous or obstructed, unless written notice, etc., has been given. This provision of the section has no application to the case now under consideration except in so far as it shows that it pertains to actions for damages or injuries to person or property. The third sentence of the section, which has been quoted in my finding, contains the provision that " The city shall not be liable in a civil action for damages or injuries to *person or property, or invasion of personal or property rights, of any name or nature whatsoever,* whether casual or continuing, arising at law or in equity,

alleged to have been caused or sustained, in whole or in part, by or *because of any omission of duty, wrongful act, fault, neglect, misfeasance or negligence* on the part of the city, or any of its agents, officers or employees, unless a claim therefor in writing, verified by the oath of the claimant, containing a statement of the place of residence of the claimant, by street and number, if any, otherwise such facts as will disclose such place of residence with reasonable certainty, and describing the time when, the particular place where and the circumstances under which the *damages or injuries were sustained,* the cause thereof and, so far as then practicable, the nature and extent thereof, shall within three months after the happening of the *accident or injury* or the occurrence of the *act, omission, fault* or neglect out of which or on account of which the claim arose, be presented to the common council and served upon the mayor or city clerk and notice of intention to commence an action thereon be served upon the corporation counsel, nor unless an action shall be commenced thereon within one year after the happening of such *accident or injury or the occurrence of such act, omission, fault or neglect;* but no action shall be commenced to recover upon or enforce any such claim against the city until the expiration of three months after the service of said notice upon the corporation counsel."

I have found in my report that there was no evidence that the notices required by this statute were served by the plaintiff before commencing the action and that no such service of notices is alleged in the complaint.

It has been repeatedly held that the provisions of this statute contain conditions precedent to the bringing of an action and that in order to recover, such notice and requirements should properly be alleged and proven upon the trial. If, therefore, this action is brought within the provisions of this charter, the plaintiff cannot recover and the complaint must be dismissed. As we have seen, the action was brought upon a contract to recover damages for the failure to perform the requirements of the contract. No wrongful act, fault, neglect, misfeasance or negligence on the part of the agents, officers or employees of the city is charged. The claim is that the city should pay for the restoration of the premises to a condition in which they would be as good as when leased. It

is true that upon the trial under the answer evidence was received tending to show a failure on the part of the employees of the city to make proper inspection and repair of digester No. 3 and negligence in the operation of the plant, in failing to open the safety valve periodically relieving the pressure in the digester pending the cooking of the material, but do such negligent acts of the employees of the defendant operate to change the character and substance of the cause of action instituted by the plaintiff? Does it operate to change an action brougnt upon contract pure and simple to one brought upon a tort based upon wrongful acts, negligence or misfeasance? I am inclined to think not.

The evidence was properly received. The defendant sought the relief afforded by the Real Property Law and alleged that the city was without fault. The plaintiff, consequently, had the right to show that the defendant was not free from fault, but instead was entirely negligent. Such defense could not be permitted to change the plaintiff's cause of action or to oust the court of jurisdiction to hear his case.

I am aware that the clause " of any name or nature whatsoever, whether casual or continuing, arising at law or in equity " contains broad terms and might properly be used in a reference to actions of every kind and nature arising upon torts or contracts, but in this statute the clause quoted is preceded by the clause, " action for damages or injuries to *person or property*, or invasion of personal or property rights " (doubtless including larcenies), and then the quoted provision is followed by the words, " alleged to have been caused or sustained, in whole or in part, by or because of any omission of duty, wrongful act, fault, neglect, misfeasance or negligence." It thus seems to limit the actions to be brought under the provisions of the statute to those which are limited to torts for damages for injuries to person or property, or invasion of personal or property rights through the omission of duty, wrongful act, fault, neglect, misfeasance or negligence of the officers and employees of the city and does not include actions brought upon contract.

Section 64 of the Second Class Cities Law, quoted in the finding of my report by request, contains the ordinary provisions specified generally in the charters of cities, as well as in the

State and county statutes for the presentation and audit of claims to the board, officers or department head specified in the various statutes upon the subject. The section in question, however, contains no provision with reference to actions based upon claims, which are controlled by section 244 of the same law. These sections should be construed to be in harmony with each other.

In the case of *Reining* v. *City of Buffalo* (102 N. Y. 308) RUGER, Ch. J., in delivering the opinion of the court, said: " The sole question presented by this appeal is, whether the complaint, in an action against the city of Buffalo, should contain an allegation of the previous presentation of the claim declared on to its common council, and that forty days had expired since such presentation."

He then quotes the provisions of the Buffalo charter and concludes by affirming the judgment appealed from, in which it was held that such allegation should be alleged in the complaint as a condition precedent, the proposition which I have already conceded in the opening discussion of this question. The Buffalo charter, however, is very different from the Syracuse charter which we have under consideration and, consequently, the authority of that case could hardly be relied upon further in the case under consideration.

In the case of *MacMullen* v. *City of Middletown* (187 N. Y. 37) the question involved had reference to the constitutionality of the act of the Legislature relieving the city from liability for injuries resulting from an accumulation of snow and ice upon the sidewalk unless written notice of such accumulation is actually given to the common council and there is a failure within a reasonable time to cause its removal. It was held that the act was within the provisions of the Constitution. (*Halsted* v. *Silberstein*, 196 N. Y. 1. See, also, *Sammons* v. *City of Gloversville*, 175 N. Y. 346; *Matter of Goodrich* v. *Village of Otego*, 216 id. 112; *Gregorius* v. *City of Corning*, 140 App. Div. 701; affd., 206 N. Y. 722; *Bernreither* v. *City of New York*, 123 App. Div. 291; *Harms* v. *City of New York*, 69 Misc. Rep. 315.)

Assuming that an action to recover damages, based upon a complaint charging that the explosion of the digester resulted in consequence of the negligence of the defendant's servants

in operating the plant or for failure to inspect and repair the digester, could not be maintained without alleging the giving of the notice and performing the requirements of the statute referred to, the plaintiff still may maintain an action based upon the covenants in the lease by waiving the tort. That virtually is what the plaintiff has done in this action. He does not allege the tort, but declares upon his contract and the covenants contained therein. He thus, in effect, waives his right to maintain an action based upon the tort. (*Ganley* v. *Troy City Nat. Bank*, 98 N. Y. 487; *Lightfoot* v. *Davis*, 198 id. 261; *Harms* v. *City of New York*, 69 Misc. Rep. 315.)

A question has arisen with reference to the meaning of the covenants embraced in the lease, it being contended by the defendant that it does not require the tenant to make replacement in case of destruction of the plant by unforeseen occurrences, and did not contemplate extraordinary repairs or replacement in the event of total demolition. The covenants bearing upon this point, as stated in the lease, are (1) to pay for " all necessary repairs and replacements," and (2) agrees " to keep the plant of the party of the first part in as good condition as at present."

Under the common law prior to the statute of 1860, chapter 345, the lessees or occupants of any building or plant which shall, without fault or neglect on their part, be destroyed or so injured by the elements or other causes as to be untenantable and unfit for occupancy were bound still to pay the rent to the lessor or owner after such destruction or injury unless otherwise expressly provided by written agreement or covenant. The lessees, however, were not required to rebuild or replace, in the absence of a covenant to that effect. Under the statute of 1860 the common law was changed so as to relieve the tenant from the further payment of rent where destruction of the building or plant occurred without fault or negligence on the part of the tenant. Under the common law the lessor, without express covenant to that effect, was under no obligation to repair, but the lessee was under an implied covenant from his relations to the landlord to make what are called " tenantable repairs." He was required to treat the premises in such manner that no injury be done to the inheritancy, but that the estate may revert to the lessor undeteriorated by the

willful or negligent conduct of the lessee. He is bound to make such ordinary repairs as are necessary to prevent injury, waste and decay of the premises and make them safe for the operation for which they were designed. These duties devolved upon the lessee without any express covenant on his part and a breach of them generally will render him liable for damages. (Comyn Landl. & Ten. 188; Taylor Landl. & Ten. 163; *Walton* v. *Waterhouse,* 2 Saund. 420; *Hallett* v. *Wylie,* 3 Johns. 44; *Graves* v. *Berdan,* 26 N. Y. 498; 3 Kent Comm. 465; *Suydam* v. *Jackson,* 54 N. Y. 450.)

I have already considered the effect of the statute of 1860 under another branch of the case, reaching the conclusion that it has no application to the case under consideration, and, therefore, the further consideration of the covenant must rest upon the common-law rule. It, therefore, becomes necessary to determine what was meant by the provision " all necessary repairs and replacements," and further " to keep the plant of the party of the first part in as good condition as at present." These two clauses should be construed together and as such we find that, first, there are to be all necessary repairs. Those which are required by common law, which I have already stated, and doubtless those repairs necessary for the tenant to make in order to carry on the business contemplated in the lease. The word " replacements " has a broader and more important meaning. It doubtless contemplates the replacing of those portions and parts that have become destroyed. This, in connection with the 2d paragraph requiring the plant to be kept " in as good condition as at present," would seem to indicate that up to that point the keeping the plant in as good condition as at present, the tenant became bound to perform by " replacements." This construction appears to me to be sustained by the review of the prior history of the case. It will be recalled that the plaintiff was serving as a receiver and trustee in bankruptcy of the Syracuse Reduction and Manufacturing Company, who was the former owner of the plant in question, and that as such receiver and trustee it was his duty to look after the interests of the creditors and stockholders. He was appointed such receiver and trustee under an order of the District Court of the United States and was performing the duties of his office under the

directions of that court, and when the defendant sought a lease of the plant, the plaintiff as such receiver and trustee, presented a petition to the court stating, among other things, that the claims of creditors amounted to $35,000, and that the taxes would amount to $600; that the buildings and the plant itself need considerable repair and will continue to need repairs in the event that the same is operated, amounting to about $300 per month, and that the premium for fire insurance and compensation insurance would amount to about $350.

It further appears that on the presentation of the petition to the court the corporation counsel represented the defendant, appeared and filed an affidavit in which he claimed that the corporation was not only bankrupt, but that its property was of but little or no value; that the city had at that time no available other method or means for the disposing of its garbage, and concluded by asking the court for a proper order under which the plant may be operated for the disposal of the garbage of the city until the end of the term of the contract then existing on June 30, 1908, between the bankrupt and the city upon such terms and conditions as to the court may seem just and proper. It appeared from the testimony that a considerable discussion took place before the District Court with reference to terms. At first they were wide apart, but finally they came together and thereupon the court made the order appearing in the report of my findings, in which the plaintiff was authorized to lease to the defendant the building, plant, machinery and equipment belonging to the bankrupt estate until the 30th day of June, 1918, upon rental of $225 a month, payable monthly, that being the basis of a six per cent return to the creditors upon the outstanding indebtedness of $35,000, and also of the sum of $600 necessary for the taxes. The order further provided that the defendant is " to do all necessary repairs and replacements to the plant and keep the same in as good condition as at present, pay all insurance premiums for fire insurance on said plant and buildings upon a *pro rata* monthly basis on a total insurance not to exceed $70,000."

It is quite apparent that the judge had in mind the protection of the creditors in giving his consent to lease the premises, by

requiring that they should receive six per cent interest upon their claims, and that they should have the right to have the property finally sold and applied in payment of their claims, and for that purpose the property should be preserved in as good condition as it was at the time of making the order, and that in case it should cease to be in as good condition, replacement should be made.

Under the view taken by me of the covenant " to repair " it becomes unnecessary to determine the question as to whether the plaintiff can avail himself of the evidence of negligence as a basis of recovery for replacement.

In the case of *Appleton* v. *Marx* (191 N. Y. 81) the action was brought by the landlord for rent and for a breach of the lessee's covenant to keep the premises in repair. It was held that if the action was brought after the expiration of the term of the lease, the measure of damages will be the cost of putting the premises into repair. WILLARD BARTLETT, J., in writing the opinion, says: " The rule laid down by the leading text writers is that where the action for the breach of a lessee's covenant to keep in repair is brought before the expiration of the term, the measure of damages is the injury done to the reversion; while if the action is brought after the expiration of the term the measure of the damages is the cost of putting the premises into repair."

He then quotes from Mr. Mayne, an author frequently approved by the English courts, as follows: " Where the action is brought upon the covenant to repair at the end of the term, the damages are such a sum as will put the premises into the *state of repair* in which the tenant was *bound to leave them.*" (Mayne Dam. [6th ed.] 278.) He also quotes from Sedgwick: " Where the tenant at the end of the term leaves the premises out of repair the measure of damages is the cost of putting them into repair and not the depreciation in value of the property." (3 Sedg. Dam. [8th ed.] § 990; see note [9th ed.] 999.)

As to the general rule of damages in an action on a covenant to repair, it was said by Lord HOLT in an early case (*Vivian* v. *Champion*, 2 Ld. Raym. 1125): " We always inquire in these cases what it will cost to put the premises in repair and give so much damages." In *Yates* v. *Dunster* (11 Ex. 15), in a

suit brought in the English Court of Exchequer on a covenant to repair, it appeared that the premises, which had been destroyed by fire, were at the time of the defendant's taking possession old and in bad repair; that the cost of reconstructing them would be £1,635, but when reconstructed they would be more valuable by £600 than they were at the time of the fire. It was held that the defendant, being unable to make good the damages to the premises without putting them in a better state, was liable to pay as much only as would put the premises in as good state of repair as when he took them, and the £600 was, therefore, deducted from the total cost of restoring the premises.

In the case at bar the covenant in the lease made by the tenant is to make " all necessary repairs and replacements " and again it agrees to " keep the plant   *   *   *   in as good condition as at present." " As at present " refers to the time of executing the lease and taking possession of the leasehold premises. The city, as tenant, therefore, was bound by its covenant to keep the premises in as good condition as they were at the time it entered upon them. Subsequently the premises, it is claimed, were entirely destroyed by an explosion, and that there was nothing left but a mass of wreckage, none of which was in a condition to be used in a reconstruction of the plant. Assuming that the measure of damages is the cost of reconstruction, or of replacement of the plant so that it would be in as good condition as it was at the time the city entered upon it, and that such reconstruction must necessarily be made with new material and that the machinery and utilities installed in the plant must likewise be of new material; that it was impossible and not practical to obtain or procure second-hand material or machinery to be used for such restoration; and assuming further that the plant at the time of the making of the lease to the city was old, worn and its value impaired, if so, then the allowing of the plaintiff to recover the cost of reconstruction with new material would be giving him a new plant for the old plant. This would hardly be just. The new plant would be worth more than the old and the amount that it was worth more than the old should be deducted from the cost of the new.

In recent years we have frequently had questions before the

courts involving the determination of the valuation of new and old properties. In the assessing of the special franchise tax it has been held that the tangible property should be assessed at its actual value at the time the assessment was made and the manner of ascertaining the actual value may be made by ascertaining the cost of the construction new, deducting therefrom the depreciation of the old existing property resulting from age, decay and wear.

In the case of *People ex rel. Jamaica Water Supply Co.* v. *Tax Comrs.* (196 N. Y. 39) it was found as a fact that the water pipes under the ground had depreciated in value six per cent and, consequently, it was held that the amount thereof should be deducted from the cost of new pipe and reconstruction of new water mains. Therefore, if we ascertain the percentage of depreciation of the old plant by reason of its use, wear and tear, we would have substantially the amount that the new plant would be worth over the old plant, and consequently that amount should be deducted from the cost of the new plant. To illustrate, suppose a plant had been run for a period of ten years; that from the uses to which it was put and designed, it would ordinarily last twenty years; at the end of ten years it was totally destroyed; at that time its true value had by reason of its use and wear depreciated one-half in value. Manifestly, a rule that would give a landlord full costs of restoration by new machinery and materials in place of the old would be unjust.

Again, new material for building purposes usually has a fixed market value easily to be ascertained. New machinery and equipment generally have a stable price fixed by their manufacturers and the labor in constructing buildings and installing machinery is determined by the prevailing rate of wages existing in the locality where performed. The cost, therefore, of constructing a new plant may easily be determined with a great degree of accuracy.

The same is true with reference to the determination of the percentage of depreciation of the old building and plant. Nearly every article has a well-established period of usefulness and an expert can reach a close estimate of depreciation; while in ascertaining the value of an old plant that has been operated

for years and has become worn and impaired, the value of the building, machinery and equipment is not so easily obtainable, in view of the fact that the demand for such material is slight and offers to purchase often difficult to find.

I, consequently, am unable to accept the contention of the plaintiff as applied to the facts in this case — that he is entitled to recover the full cost to him of replacement new of the plant. I am, however, willing to accept his evidence as to such cost as constituting one step in the proceeding to ascertain the true amount of his injuries, for which the defendant should pay under the rule of cost replacement new less the depreciation in value of the old. There are cases in which the plaintiff's contention would doubtless apply, as, for instance, where a building new and in perfect repair is leased to a tenant under a covenant by which he agrees to replace and to surrender in as good condition as when taken. In such a case it would be but just, in case of destruction, that the tenant should bear the cost of the new construction.

The defendant claims that the rule of damages is the value of the old plant at the time it was leased less the value of the remains after the explosion. As applied to the facts in this case I do not question the claim of the defendant in this regard, and I consequently have permitted it to offer evidence in support of its contention. Either rule may be followed, for both lead to the same result, the difference being only in the manner in which the inquiry proceeds.

I have concluded to disallow plaintiff's claim for $3,000 for cleaning up the premises after the explosion and after the plaintiff had retaken possession after the expiration of the lease. He appears to have sold *upon the premises* the wreckage, and such wreckage was subsequently removed by the purchaser from the site. The amount that the purchaser paid for the wreckage or its value at that time has not been given me, nor have I further details with reference to the purchase. I must conclude, therefore, that the purchase was made of the materials upon the premises; that the purchaser assumed the duty of removing the material and that, consequently, the plaintiff did not pay therefor and should not be permitted to charge for it in his action for damages. It is true, however, that the defendant did give evidence as to the value of the premises

at the time of the leasing to the effect that the premises were then worth $4,649; that of that sum $3,624 of the valuation was for scrap, and the other $1,025 only was for value of the equipment of the plant. This scrap so testified to was chiefly of metal in the building and its value was given as upon the ground and in the building. The explosion that subsequently occurred virtually made scrap of the whole plant, but it did not materially change the value of the scrap that existed before the explosion.

Some confusion appears in the testimony of the witnesses giving evidence as to the values at different times, but that which pertained to the value of the property as of the time of the trial was rendered useless by reason of the plaintiff electing to confine his claim to the time that he regained possession upon the termination of the lease. As to the dates between the executing of the lease in November, 1917, and the termination of the lease on the 30th day of June, 1918, a period of approximately eight months, the testimony shows that during that period there was no perceptible change in the values of the property or material constituting the plant, so that the confusion with reference to the dates becomes harmless.

My conclusions are that the replacement cost of the plant new, based upon the testimony of the witness Springborn, was $87,789.89; that the premises so constructed would be worth $27,479.89 more than the plant at the time of the leasing; that the value of the plant at the time of the leasing was $60,310. From this amount there should be deducted the value of the scrap shown by the defendant's testimony as $3,624, leaving as a balance $56,686, for which sum the plaintiff should be awarded judgment, together with items claimed in his second and third causes of action.

The pending action is one at law and not in equity. The right of a party to costs, therefore, is to be determined by the provisions of the Code of Civil Procedure and is not awardable in the discretion of the court. The question as to whether costs could be awarded under section 3245 of the Code will more properly come before the taxing officer when a bill for costs is presented to him.