## STELLA B. WADDELL *v.* MARGARET DEJET.

1. LANDLORD AND TENANT. *Contract. Construction. Intention. Situation of parties. Condition of property.*

   A court, in construing a contract of lease, should consider the situation of the parties at the time the contract was made, not to add to or vary the terms of the written contract, but to ascertain intention from the contract in the light of that situation, looking to the subject-matter of the agreement and the then condition of the property.

2. SAME. *Repairs.*

   If a lessee covenants "to take good care of the leased premises, and to return the same in as good order as at the beginning of the lease ordinary wear and tear and damage by fire, wind and water excepted, . . . and make, at his own expense, all necessary repairs," he is obliged to make all such repairs as are necessary to keep the premises in such condition. The exceptions cannot be construed to relieve of such obligations.

3. SAME. *Insolvency. Cancellation of lease.*

An insolvent tenant, who violates his obligation to repair, to the extent of endangering the destruction of the leased premises, subjects himself to a suit for the cancellation of his lease.

FROM the chancery court of Jackson county.

HON. N. C. HILL, Chancellor.

Mrs. Margaret DeJet, the appellee, was the complainant in the court below; Mrs. Stella B. Waddell, the appellant, was defendant there.

Mrs. DeJet, in March, 1896, leased her tenement house on the seacoast to Mrs. Waddell for a term of ten years, for an annual rent of $120, payable monthly, the lease providing that the tenant was "to take good care of said property and return the same to Mrs. DeJet in as good order as it now is, ordinary wear and tear and damage by fire, wind, and water excepted, and make, at her own expense, all repairs." In February, 1897, Mrs. DeJet filed her bill in this cause, setting up the lease, averring Mrs. Waddell's insolvency, and her refusal to make any repairs; that the roof was decayed, and the house thereby endangered, and the other facts stated in the opinion showing the necessity for prompt action to prevent serious damage to, if not the absolute destruction of, the property, and sought cancellation of the lease. Mrs. Waddell demurred to the bill, the court below overruled the demurrer, and Mrs. Waddell appealed to the supreme court.

*Cooper & Waddell,* for appellant.

The tenant agrees to return the property at the end of the lease in as good condition as it was at the time when she took it, except as the condition of the property might be changed, first, by ordinary wear and tear; second, by damage by fire third, by damage by wind; fourth, by damage by water. The tenant further agrees not to call on the landlord for repairs, and to make all necessary repairs at her own expense. The manifest purpose of the present bill is to impose upon the ten-

ant an obligation not only to put such repairs upon the place as shall be necessary to keep it habitable and fit for her use, but also to prevent deterioration from ordinary wear and tear; to improve the house by putting on a new roof, and thus diminish the liability to burn, and protect it from the combined effect of wind and water by building a breakwater in its front. The court will observe that the complainant insists that the appellant shall do precisely what her contract stipulates she shall not do. By the lease the tenant is not bound to answer for deterioration of the property by wear and tear, by fire, by wind or by water, but the complainant seeks to cancel the lease because the tenant refuses to protect the premises from injury by the excepted causes by expending large sums of money in improvements to prevent such injuries. In other words, though, by the lease, exemption to the tenant is secured from injury by certain agencies, the complainant contends that she must prevent such agencies from action, and if she does not, that cancellation of the lease should be decreed.

The court will observe that the conditions which now exist existed when the lease was made. The breakwater was down, the roof was old, the window lights were out, the Gulf of Mexico was at her door, and subject to storms from the south and west. With full knowledge of all these facts, the complainant expressly stipulated that the tenant should not be liable for injuries resulting from these or any of these causes, and yet she comes into court and demands cancellation of the lease because the tenant refuses to protect the premises from these possible injuries. The landlord has the right to make improvements if they are necessary for the preservation of the property. 12 Am. & Eng. Enc. L., 725, subdivision 5, and authorities cited under note 1.

The danger of loss apprehended by the complainant is said to exist, first, from fire and the waters of the Gulf of Mexico, and, second, from the inherent defects of the building. But in the contract all these things, it is expressly provided, the

tenant shall not provide against.   A covenant to restore premises in good order and condition, wear and tear excepted, is not
broken where the injury results from inherent defects.   *Hess*
v. *Newcomer*, 7 Md., 325; *Ardem* v. *Pullen*, 10 M. & W.,
321; *Smith* v. *Stagg*, 15 Jones & S., 514; *Warren* v. *Wagner*,
75 Ala., 200; *Howeth* v. *Anderson*, 78 Am. Dec., 538; *Taylor* v. *Hart*, 73 Miss., 22; *Wattles* v. *South Omaha Ice & Coal
Co.*, 50 Neb., 251, s.c. 36 L. R. A., 424.

*J. I. Ford*, for appellee.

The appellant contends that, by the terms of the lease, she
is under no obligation to repair the breakwater, or the roof of
the building, because the lease exempts her from damage "by
fire, wind and water," and that the word "water" thus used
exempts her from paying for or repairing damage done by rain,
resulting from appellant's negligence to repair the roof, and
also from damage done by the encroachment of the sea undermining the embankment on which the house sits, resulting from
appellant's negligence in failing to keep a breakwater in front
of the property.   We submit that this lease, like every other
contract, is to be construed in the light of common sense, and
that interpretation given it which carries out the real intention
of the parties.   It is a cardinal rule of construction that every
part of the contract must be made, if possible, to take effect,
and every word to operate in some shape or other.   Broom's
Leg. Max., sec. 539.   To construe the lease as contended by
appellants would not only permit appellant to plead her own
wrong and negligence in excuse of the injury done appellee,
but would operate to eliminate from the lease the words, "the
said Stella B. Waddell agrees also to make, at her own expense,
all necessary repairs, and not to call on Mrs. DeJet for repairs."
For it is perfectly manifest that the only repairs this or any
other house will need are repairs to guard against fire, wind or
water.   At common law, independently of any express agreement on the part of the tenant, and in the absence of the land-

lord's undertaking to keep the premises in repair, whether for life or for years, the tenant is under obligation to treat the premises in such manner that no substantial injury shall be done them, and so that they may revert to the landlord at the end of the term unimpaired by any wilful neglect on his part. A tenant for years, or from year to year, must keep the premises wind and water tight. 1 Taylor on Landlord & Tenant, p. 401, sec. 343. But where there is an express covenant to repair, the tenant must make good all the losses sustained. *Ib.*, pp. 417, 357. Under a general covenant to repair, the tenant must take care that the property does not suffer more than the usual operations that time and nature will effect. *Ib.*, p. 418, sec. 358. A covenant to keep premises "in good repair as they now are," is held equivalent to a general covenant to repair. *Stultz* v. *Lock*, 47 Md., 562. Yet this appellant comes into court, admitting that the bank is caving day by day, and that the roof is so rotten that the house leaks all over, and that long before the expiration of her term the house will be rotted down for the want of a roof, or washed into the sea for want of a breakwater, and says, because she is exempted from damage from fire, wind and water, and that it is rain water that is doing the damage, that she is under no obligation to repair the premises; that this exemption nullifies the general covenant contained in the lease.

This entire contract can be construed so as to give force to all its provisions and carry out the intention of the parties without hardship on either. The exemption in the lease simply means that appellant should not be held responsible for damages from fire, wind and water which were not brought about by her own negligence and wrong, and that she should make such necessary repairs as might be needed to preserve the property to the end of the term in the condition it was to begin with. If appellant can, under this exemption, sit down and negligently permit the house to rot down for want of a roof to protect it, she can likewise set the house on fire, and say that she was ex-

empted from the damages produced from fire.    It is axiomatic
that a party cannot plead his own wrong or negligence in de-
fense of his conduct.    The exceptions in the lease exempted
appellant from damages resulting from accidents or casualities,
and not from injuries arising from her neglect to take the neces-
sary steps to protect the property.    If the house were blown
down in a storm, or washed away by a tidal wave or overflow,
or accidentally burned, then she would be exempted from paying
rent or rebuilding the house.    But she cannot negligently burn
the house, permit it to decay for want of a roof, or to be under-
mined for want of a breakwater, and plead these exceptions in
defense of a suit for the damages thus done the property.

WHITFIELD, J., delivered the opinion of the court.

It is the duty of a court, in construing a contract, to place
itself in the situation of the parties at the time the contract was
made, and to ascertain their intention from the contract in the
light of that situation, looking also to the subject-matter of the
contract.    So dealing with this contract, we think the clause
" damage by fire, wind or water excepted," means, in view of
the further stipulation that Mrs. Waddell agreed " to make, at
her own expense, all necessary repairs, and not to call on Mrs.
DeJet for repairs," extraordinary damage by fire, wind or
water.    This harmonizes with the succeeding stipulation that,
in case of destruction by fire, wind or water, rent was to cease
from that time.    If the premises were destroyed by any of
these agencies, rent was to cease, and the lessee was not to be
liable for such damages—not liable to rebuild.    This view is
further borne out by the stipulation that the lessee was to re-
turn the premises in as good condition as they then were, ex-
cept " ordinary wear and tear."    " Ordinary wear and tear "
would include any usual deterioration from the use of the prem-
ises in the lapse of time—ten years, a long lease of such prop-
erty.    Extraordinary damage from fire, wind or water would
be unusual, partial or total destruction.

The demurrer admitted all that was well pleaded in the bill, and that charged that the roof was decayed, and the rain coming through at the time of the lease, and in danger of fire and rain floods; that the breakwater, an absolute necessity to the existence even of the building—a ten-room tenement used as a boarding house—was wholly gone, and needed to be at once renewed; that the window frames were out; that the water of the gulf would wash away the bluff and the building during the lease if the breakwater were not put there, and that all these facts, showing the condition of the property, its peculiar situation, were well known to both parties at the time the lease was made, and that they dealt with it in its then condition, with reference to these known facts. Of course these facts are not to be looked to to add to or vary the terms of the written contract, but they may properly be looked to as showing the nature of the property, its situation and condition, at the time of the lease; that the court may look at the parties in the light of these facts, as thus circumstanced, in arriving at their intention, manifested by the contract made with reference to this property so conditioned. To hold otherwise would be to hold that this old woman, dealing thus with appellant's agent about this building, then thus dismantled and in need of instant necessary repairs, and excusing herself from making them, and binding appellant to make them at her own expense, must stand by for ten years and see her property ruined for want of necessary repairs— repairs necessary to its very existence, necessary to keep it as it thus was, which very repairs appellant was bound, by the lease, to make. "Necessary repairs" must be held here to mean necessary to keep that property, situated as it was, in as good condition as it then was—the condition in which appellant agreed to return it—and these appellant must make or submit to a cancellation of the lease.

*Affirmed.*