SWEEZY v. COLLINS NORTHERN ICE CO.

1. LANDLORD AND TENANT—DAMAGE BY ELEMENTS—WORDS AND PHRASES—DECAY.

The words "damaged by the elements," used in a clause of a lease of certain ice houses, providing that the tenant should keep in repair the buildings leased, reasonable use and damage by the elements excepted, relieved the lessee from repairing damage caused by ordinary decay.

2. SAME—CURING ERROR.

That the trial court, after charging the jury improperly as to damage by elements, submitted instructions inconsistent with his first definition did not cure the erroneous instruction.

3. SAME—REASONABLE USE.

Under the terms of the lease, the tenant was not bound to maintain the premises in repair as against ordinary use as an ice house.

4. SAME—DAMAGES—REPAIRS.

Where the ice houses were old and fell by reason of deterioration, caused, as plaintiff claimed, because of defendant's breach of its agreement to repair, or, as defendant claimed, because of natural decay and ordinary use, the court should have submitted the issue to the jury, under instructions that plaintiff could, if the jury found in his favor, recover only the cost of reconstructing them so as to leave buildings of the value of the ice houses in question at the termination of the, tenant's lease: it was error to permit the jury to award as damages the cost of building new ice houses less the value of the wreckage.

Error to Kent; McDonald, J.   Submitted January 19, 1912.   (Docket No. 103.)   Decided July 11, 1912.

Assumpsit by Mary L. P. Sweezy against the Collins Northern Ice Company for breach of the covenants of repair in a lease and for other damages.   Judgment for plaintiff, defendant brings error.   Reversed.

*Grove & Davis,* for appellant.

*Linsey & Shivel,* for appellee.

Plaintiff was the owner of three icehouses, each 25 feet wide and 100 feet long, which had been built at a cost of about $2,300 in the summer of 1894 on Lake Lamberton, in Kent county. These houses were used for the first five years by plaintiff's husband. They were then rented for a term of five years. This lease was acquired by the defendant during the first year of the term. At the expiration of this lease a new one was entered into between the plaintiff and defendant, bearing date October 3, 1905, for the term of five years from November 15, 1905. This lease contained the following provisions:

"For these rights and privileges the lessees agree to pay the sum of five hundred ($500) dollars for the first year, payable four hundred ($400) dollars Nov. 15th, 1905, and one hundred ($100) dollars Jan. 15th, 1906, and the sum of four hundred fifty ($450) dollars for each subsequent year, payable in advance, Nov. 15th, 1906, and each year thereafter; to put in reasonable repair so as to be in usable condition and safe, said three icehouses, and to maintain them in such repair and condition, reasonable use and damage by the elements excepted, to maintain the leased premises, at all times, in an orderly and cleanly condition, and free from inflammable material; and to keep the ice tools and scales in good order and condition, reasonable use and damage by the elements excepted, and to cut ice for, and to maintain and build up, as far as possible, a retail ice business in the north end of the city.

"(5) It is agreed that, for the purpose of making immediate repairs to the other three buildings, the lessees may use such portions of the fourth building now standing, as have been agreed upon by the parties; that the lessees will furnish to the lessor, from time to time, such ice as she may wish for her personal family use, and no more; and, before the expiration of this lease, the lessees may remove any building which they have erected."

This defendant at once sublet the premises to the Christensen Ice Company, which continued in possession until about June, 1910, when it abandoned possession, the

buildings having become unfit for use. The buildings finally collapsed during the summer or fall of 1910. Plaintiff's testimony shows that the wreckage was worth $120. In 1905, when this term commenced, the buildings were 10 years old, and had been propped up. At that time six new props were put in; the props being furnished by the plaintiff. It is claimed by defendant that other repairs were made at the outset by the defendant's assignee, and that during the term further repairs were made from time to time, that all repairs were made that were possible without rebuilding, and that the partitions by reason of the character of the use had become so rotten that repair was impossible. The houses were filled each year until 1909. In that year only a small quantity (about fifty tons) of ice was put in. Two of the houses had then become useless through decay or lack of repair. Plaintiff brought suit to recover damages (1) for defendant's failure to repair; (2) for loss of rent during the season of 1910–11; (3) for damage to ice tools; (4) for failure to deliver to her ice mentioned in the lease to the value of $50.

Touching the defendant's duty to repair, the learned trial judge charged the jury in part as follows:

"In the lease between these parties, defendant's duty to repair is qualified by the following language: 'Reasonable use and damage by the elements excepted.' It was expected by the parties that there would inevitably be some damage from the use of these buildings for ice purposes. Defendant was not to be responsible for any decay arising from the reasonable use of the buildings for such purposes. If the buildings were damaged from this cause, defendant would not have to make them good. (Although against such it would be required to maintain in a usable condition and safe, during its tenancy.) It was also expected by the parties that there might be damage to the buildings from the elements. (Elements, and damage by the elements, refers only to some sudden, unusual, or unexpected action of the elements, such as flood, tornado, or the like, extraordinary disaster not anticipated by either party, originating after the tenancy began. Defendant

was under no obligation to repair from such damages, but there is no evidence in this case that there were any such damages.)   I give you the instruction because of the argument of counsel on both sides in regard to it."

Evidence was introduced on the part of the plaintiff tending to show that it would cost from $2,500 to $3,000 to reproduce new buildings in 1910 like those were when they were built in 1894.   Upon the measure of this element of damage the following instruction was given:

"If you find, by a fair preponderance of the evidence, that the plaintiff is entitled to recover for damages to the icehouses, you will allow her what the evidence shows it will cost to put them in a usable condition and safe.   As the evidence shows that the buildings had fallen down, the costs of making the repairs would be what the evidence shows the cost of reconstructing them would be less the value of the lumber and material in the wreckage.   In regard to the other elements of damage, I have instructed you as to the measure of damages."

A verdict was rendered for plaintiff in the sum of $3,000.   A motion for a new trial was denied upon condition that plaintiff remit the sum of $1,500.   This the plaintiff at once did, and a judgment was entered in her favor for $1,500.

BROOKE, J. (*after stating the facts*).   We will first discuss that part of the charge which deals with the duty of the defendant to repair, "reasonable use and damages by the elements excepted."   This exception was under consideration by this court in the case of *Van Wormer* v. *Crane*, 51 Mich. 363 (16 N. W. 686, 47 Am. Rep. 582).   Justice COOLEY there said:

"'Damages by the elements' must be conceded to be a somewhat uncertain expression.   *   *   *

"Anciently it was supposed there were four elements of material things—earth, air, fire, and water; and, when it came to be known that this classification had no scientific basis, the term had found a place in common speech which it still retains.   Injuries to buildings by wind, rain, frosts, and heat are spoken of as injuries by the elements,

and all the ordinary decay from natural causes is classed in the same category.   Probably no one would make any question respecting this.   *   *   *

"If a flood had destroyed this building the defendants would not be held responsible, because it would have been said the damage is of a sort that must be referred to the elements within the understanding of the parties in entering into this covenant.   If a tornado had destroyed it, the same would have been said.   We cannot suppose the parties intended to accept natural and ordinary decay from wind and rain, and not the more sudden and grievous calamities proceeding from the same sources.   *   *   * In the popular acceptation of the phrase, injuries by the elements are such injuries as result from the operation of the most common destructive forces of nature against which buildings need to be protected."

In a concurring opinion written by Justice SHERWOOD it is said:

"It is claimed by the plaintiff's counsel that it (the word 'elements') does not include accidental fire or a burning by fire connected with any human agency, but burning caused by lightning or arising from some action of the elements alone; that the legal signification of the word as used in this lease is synonymous with the phrase 'act of God'; that the word 'elements,' as here used, means earth, air, fire, and water; but to enable the defendants to claim the benefit of the exception contained in the covenant to repair, such injury must result from the action of the elements entirely; that the lightning must kindle the fire; the earth must be convulsed; the air must blow in a tempest or tornado; the water must come in water-spouts, or from sudden irruption of the sea breaking by its own force over the barriers.

"We are not able to agree with the learned counsel in this construction."

This case has been lately cited with approval and followed in the case of *Hanchett* v. *O'Reilly*, 76 N. J. Law, 212 (68 Atl. 1066).   The subject will be found fully discussed and digested in 53 L. R. A. 673, note.   1 Wood's Landlord and Tenant (2d Ed.), p. 806.   We are convinced that the rule in Michigan is that "damage by the elements" includes all injury by wind, rain, snow, frost, and

heat as well as all ordinary decay from natural causes. A different rule seems to obtain in some other jurisdictions. See *Harris* v. *Corlies,* 40 Minn. 106 (41 N. W. 940, 2 L. R. A. 349), from which case the learned circuit judge seems to have taken the definition of the term given to the jury. See, also, *Polack* v. *Pioche,* 35 Cal. 416 (95 Am. Dec. 115). This case was discussed and disapproved by Mr. Justice SHERWOOD in *Van Wormer* v. *Crane, supra.*

We conclude that, though in other portions of the charge the learned circuit judge gave instructions to the jury inconsistent with his definition, the giving of the erroneous definition cannot be said to be error without prejudice.

One portion of the charge is as follows:

"Defendant was not to be responsible for any decay arising from the reasonable use of the buildings for such purposes. If the buildings were damaged from this cause, defendant would not have to make them good (although against such it would be required to maintain in a usable condition and safe during it tenancy)."

This instruction would seem to import a contradiction in terms. Defendant's covenant to repair distinctly excepts damages arising from "reasonable use" as well as those caused by "the elements."

Defendant urges that the measure of damages laid down by the court was erroneous. We think this claim correct. At the time this lease was entered into the buildings in question were 10 years old. Defendant introduced testimony tending to show that the life of such structures is about 14 years. This was disputed on behalf of plaintiff, but whether true or false it is entirely obvious that buildings of this character would, through natural decay, deteriorate from year to year, and that they would have been much less valuable when 10 years old than when new. Yet no testimony was introduced on behalf of plaintiff as to the value of the buildings at the time the contract was entered into. The jury were permitted to

consider the cost of new construction in 1910, and their verdict indicates that they allowed practically the full value thereof. Upon what theory the learned circuit judge reduced the judgment one-half the record does not disclose. Assuming that the icehouses fell by reason of defendant's failure to repair in accordance with the terms of his covenant, and not because of the action of the elements upon structures of their age and character, the true measure of damages would be such a sum as would put the premises in the condition in which the tenant was bound by its covenant to leave them. 24 Cyc. p. 1099, and cases cited. 1 Taylor's Landlord and Tenant (9th Ed.), § 368.

The plaintiff is not entitled to a new structure in place of an old one. The character, condition, age, and value of the buildings at the time of the making of the lease must be taken into consideration. The tenant was bound to leave, not new buildings, but buildings which at the termination of its lease would have been 16 years old. The value of such buildings less the value of the wreckage would, we think, represent the proper measure of this element of plaintiff's damage if the jury should determine, under proper instructions, that the loss occurred by reason of defendant's default. *Yates* v. *Dunster*, 11 Exchq. 16.

Other errors are assigned, but they do not require discussion.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., and STEERE, MCALVAY, STONE, and OSTRANDER, JJ., concurred. BLAIR and BIRD, JJ., did not sit.