45748.   ZEEMAN MANUFACTURING COMPANY, INC.
et al. v. L. R. SAMS COMPANY, INC.

ARGUED NOVEMBER 2, 1970—DECIDED NOVEMBER 16, 1970—
REHEARING DENIED DECEMBER 8, 1970—CERT. APPLIED FOR.

*Robinson, Buice, Harben & Strickland, B. Carl Buice, Kaler,*

*Karesh, Rubin & Frankel, Samuel N. Frankel,* for appellants.

*Robert E. Andrews,* for appellee.

EBERHARDT, Judge. ■ Appellee has moved to dismiss the appeal, asserting that there has been a delay in transmitting the record to this court because of the delay of appellants in paying the costs in the lower court. The stamp of the clerk of the lower court appearing on the face of the transcript shows that it was filed in his office August 20, 1970. Exhibits attached to the motion to dismiss show a statement of accrued costs dated August 20; a receipt for the paid costs dated August 25; and a receipt for registered mail transmitting the record to this court dated August 26. The certificates of the clerk as to the correctness of the record and transcript are dated August 20, and there is a certificate that the record was transmitted late without fault of counsel for either side, but due to a misapprehension on the part of the clerk as to when the record was to be transmitted. *Code Ann.* § 6-808 provides that the clerk of the trial court shall transmit the record within five days after the date of filing of the transcript in his office. CPA § 6 (a) (*Code Ann.* § 81A-106(a)) provides, inter alia: "In computing any period of time prescribed or allowed by this Title, by the local rules of any court, [by order of court, or][1] *by an applicable statute,* the day of the act, event, or default from which the designated period of time begins to run shall not be included. . . *When the period of time prescribed or allowed is less than seven days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation."* (Emphasis supplied). August 22, 1970 was a Saturday, and August 23 a Sunday. Hence if CPA § 6 (a) applies to the computation of time prescribed by *Code Ann.* § 6-808, the record was timely transmitted irrespective of how promptly appellants may have paid the costs.

The determination of what is an "applicable statute" within the meaning of Rule 6 (a) has received consideration by the federal courts in connection with various federal statutes. See generally 2

---

[1]The material in brackets apparently was inadvertently omitted in the 1967 amendment to the CPA. See *Davis v. U. S. Fidel. &c. Co.,* 119 Ga. App. 374 (167 SE2d 214), note 1.

Moore's Federal Practice, § 6.06. Quoting from this section of Moore and a federal case there cited, we held in *Davis v. U. S. Fidel. &c. Co.,* 119 Ga. App. 374 (167 SE2d 214) that the phrase "applicable statute" refers directly only to statutes applicable to proceedings had after the commencement of the action, and hence would not apply expressly to a statute of limitation. We followed *Davis v. U. S. Fidel. &c. Co.,* 119 Ga. App. 374, supra, in *Schaefer v. Mayor &c. of Athens,* 120 Ga. App. 301 (5) (170 SE2d 339), where we held that "*Code Ann.* § 81A-106 (a) provides for the computations of time applicable to proceedings *after commencement of the action.*"

The preparation and transmittal of the record, whether it be thought of as part of trial practice or as part of appellate practice, is, of course, a process occurring after commencement of the action. As a general proposition the computation of time provided for by Rule 6 (a) has been held applicable unless a contrary policy is expressed in a governing statute or court decison. See generally 2 Moore § 6.06, supra, and cases cited. We know of no policy which would prohibit the time prescribed by *Code Ann.* § 6-808 from being computed as set forth in CPA § 6 (a); and when the intermediate Saturday and Sunday are excluded, it is obvious that there was a timely transmittal. The motion to dismiss is denied.

■ Enumerations of error 3 and 4 raise the issue of whether the lessor estfiblished with sufficient particularity the dollar amount of any damages sustained. The applicable measure of damages in this type case is the reasonable cost of restoring the premises to the condition contemplated by the covenant; and, in order to recover under the complaint claiming only items of special damage, it was essential that the lessor prove the specific acts of waste or damage alleged and the reasonable cost of restoration in relation to the specific injuries shown. *Spacemaker, Inc. v. Borochoff Properties, Inc.,* 112 Ga. App. 512 (145 SE2d 740).

Appellants-lessees, in their brief, have taken up each separate item of damage claimed and have asserted that the proof wholly failed to meet the criteria of the *Spacemaker* case, supra. In response appellee-lessor has made only three references to particular pages of the transcript where it is contended evidence as to costs of repair or restoration can be found. We therefore must assume

that there is no other evidence to substantiate claims of damage as to the injuries for which no specific reference is made. Rules of Court of Appeals, 17 (c) (3) (c) (111 Ga. App. 883, 891). And see *Ga. Stainless Steel Corp. v. Bacon,* 120 Ga. App. 239 (170 SE2d 270).

Of the three references made, one is to testimony of a witness that the only way the roof could be repaired would be to tear the roof off and re-rafter it, and that the cost of doing so would probably be $15,000. However, to award this amount would be equivalent to replacing an old roof with a new roof without allowance for depreciation prior to the inception of the lease and for "normal wear and tear," or depreciation, during the term of the lease. The courts have generally held in this context that the owner or lessor is not entitled to replacement of an old structure without deduction for depreciation of the old one. *Polk v. Fulton County,* 96 Ga. App. 733, 736 (101 SE2d 736); *State Hwy. Dept. v. Murray,* 102 Ga. App. 210, 213 (115 SE2d 711); *Mercer v. J. & M. Transportation Co.,* 103 Ga. App. 141, 143 (118 SE2d 716); Marcy v. City of Syracuse, 199 App. Div. 246 (192 NYS 674); Vaughan v. Mayo Milling Co., 127 Va. 148 (102 SE 597); Sweezy v. Collins Northern Ice Co., 171 Mich. 75 (137 NW 84); Yates v. Dunster, 11 Exch. 15 (156 Eng. Rep. 726).

What does "normal wear and tear" include? "Normal" has been held to mean ordinary, usual, average, or the like (United States v. Fallbrook Public Utility Dist., 109 FSupp. 28, 38), and normal "[w]ear and tear means normal depreciation. Green v. Kelley (1945), 20 N. J. L. 544. No doubt what is 'normal' must be responsive to practices in the service for which the vessel is intended. New York, N. H. & H. R. Co. v. Delaware, L. & W. R. Co., (2 Cir.) 23 F2d 487; The G. G. Post, (WD NY, 1945) 64 FSupp. 191 . . . The effects of negligence are not wear and tear, and they do not become wear and tear merely because they may be anticipated. Gorman Leonard Coal Co. v. Peninsular State S. S. Corp., (1 Cir. 1933) 66 F2d 83; The G. G. Post, supra." Moran Towing Corp. v. M. A. Gammino Const. Co., (1 Cir. 1966) 363 F2d 108, 114. "'Ordinary wear and tear' would include any unusual deterioration from the use of the premises" during the lease period, or the period of the lessee's occupancy. Waddell v. De Jet, 76 Miss.

104 (23 S 437). Thus, as to all items which the lessor was not bound to maintain, when we exclude normal wear and tear, as the lease provides, the lessee is bound to replace or repair items which are broken, destroyed, or damaged by wilful, negligent or accidental acts.

The lease specifically provides that "lessee shall maintain the interior of the premises," and under the rule of inclusio unius est exclusio alterius maintenance of the exterior remained the obligation of the lessor. *Code* § 61-111.

The lease also provides that the "lessor shall maintain the roof, structural portions of the building, and the improvements placed thereon by the lessor during the terms of this lease. . ." The question is not raised on this appeal, and we do not decide what the obligation of the lessee may have been as to these portions of the premises, beyond the obvious proposition that it must answer for any wilful damage which it may have done. The roof is a substantial and component part of the building. It is conceded that it was not new at the inception of the lease, though it does not appear when it was installed. There is nothing in the evidence which would enable the jury to determine how much of the condition claimed as to the roof may be attributable to depreciation which had occurred before the lease period, or how much may be attributable to "normal wear and tear" during the lease period, or how much, if any, maintenance was required or was done by the lessor during the lease period. There was no basis upon which the jury could compute the cost of restoration (after crediting the "normal wear and tear," the lessor's obligation, etc.) which may be required in repairing or replacing damage, if any, chargeable to the lessee. The holding in *Ga. Hydratane Gas, Inc. v. White,* 110 Ga. App. 826, 837 (140 SE2d 129) does not require a different result, since the cost of restoration to the former condition in that case exceeded the cost of erecting new buildings because of the lack of availability of materials.

Lessor's reference to its exhibit 21, consisting of canceled checks totaling $9,092.07, cannot support the verdict of $12,225. Moreover, many of these checks did not relate to damage caused by the lessees. The remaining reference to the transcript, made in support of the contention in the brief that the witness testified the building was damaged in the amount of $20,391.50, does not sus-

tain that contention but reveals only a statement by counsel addressed to the witness that counsel noticed that the amount of the verdict sought was $20,391.50. It is hornbook law, requiring no citation of authority, that neither the pleadings nor the contentions made therein, including the amount of damages alleged and sought to be recovered, is evidence. It is not raised to that level merely by reference made to it, by counsel or by a witness.

While we are loathe to disturb verdicts, we must conclude that the lessor, claiming a multitude of separate items of damage, failed to introduce evidence sufficiently definite to establish a reasonable cost of repair or restoration for any of the items which would authorize the jury to return a verdict for $12,225. Accordingly the judgment must be reversed and a new trial had.

■■ Headnotes 3 and 4 require no elaboration.

*Judgment reversed and new trial ordered. Jordan, P. J., and Pannell, J., concur.*

## ON MOTION FOR REHEARING.

In its motion for rehearing, lessor makes references to the transcript where it is contended that evidence can be found specifically detailing amounts of damage sufficient to support the verdict of $12,225. The items pointed out are loss of rent for two and one-half months (while repairs were being made) at $850 per month—$2,125; cutting table—$1,500; general repairs, including painting, roofing, removing nails, tearing down hooks—$9,092.70; tearing off and re-raftering roof—$15,000.

As we pointed out in the main opinion, the evidence as to the roof was not sufficiently definite to establish a reasonable cost of repair or restoration since no allowance was made for replacing an old roof with a new roof, or for the lessor's obligation to maintain it. The reference to the "general repair" evidence of $9,092.07 reveals that the witness was only identifying lessor's exhibit 21, consisting of canceled checks totaling $9,092.07. As we previously noted in regard to this exhibit, it is impossible to tell which of these related to damage caused by the lessee and which did not. As we understand the evidence in regard to the long cutting table (for which appellee claims damages of $1,500), it was cut into four sections because lessee needed more space. This was done by lessor's consent with the understanding that the table

would be re-assembled at the termination of the lease, which lessee was in the process of doing when stopped by lessor because the materials being used were of an inferior quality. The evidence shows the original cost of the table to have been $1,015, but there is no evidence as to the cost of properly re-assembling it.

Lessor asserts that we are misconstruing *Spacemaker, Inc. v. Borochoff Properties, Inc.*, 112 Ga. App. 512 (145 SE2d 740), under which the complaint was drawn and the case tried, and that the present opinion requires proof of the cost of patching each of hundreds of nail holes, etc., or requires a separate contract for each minute item of damage. Neither opinion so holds. What the *Spacemaker* case requires is that where, as here, the lessor claims a multitude of separate items of damage, some of which a jury might accept and others that it might reject, they must be furnished sufficient guidelines as to each item or group of similar items in order to arrive at a reasonable cost of repair or restoration for the items they find the lessor entitled to recover. A reading of the entire transcript reveals that this was not accomplished in the instant case.

*Judgment adhered to. Jordan, P. J., and Pannell, J., concur.*