73472. ABERNETHY et al. v. CATES et al.
(356 SE2d 62)

BENHAM, Judge.

Appellants leased commercial property from appellees under a lease which provided that the tenants were financially responsible for maintaining and repairing the leased premises and were to return the premises to the landlords in as good a condition and state of repair as when first received, normal wear and tear and casualty damage excepted. Appellants subsequently sublet the premises, with appellees' permission. The subleasing agreement, signed by appellants and appellees as well as the subtenants, provided that nothing in the subleasing agreement altered or amended the duties and obligations of appellants under the original lease. When the subtenants vacated the premises prior to the termination of the lease, appellees reentered the premises and repaired the damage done to the building after appellants refused to do so. Appellees then filed this lawsuit to recover the amount expended to repair the damages incurred during appellants' lease. Judgment in favor of appellees in the amount of $13,835.48 was entered following a jury verdict in that amount. This appeal followed.

1. Each of appellants' initial three enumerated errors concerns the trial court's decision permitting a lay witness to testify as to the amount of the damages attributable to ordinary wear and tear. The trial court allowed the owners' agent to testify that between five and ten percent of the monies expended to repair the building after the subtenants vacated was attributable to fixing ordinary wear and tear. Appellants contend that such an opinion can be rendered only by an expert witness and, even if lay testimony on the subject is permissible, no factual basis for the witness' opinion was established.

"Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor . . ." OCGA § 24-9-65. " 'The class of questions here referred to must be such as lie within the range of common opinion.' [Cit.] That is, an opinion which is supposed to be within the common knowledge, experience, and education of men. [Cit.]" *Cone v. Davis*, 66 Ga. App. 229 (6) (17 SE2d 849) (1941). Expert testimony is permitted "[i]f the nature of the question

is such that factors leading to a conclusion are not known to the common or average man, but are among those things shrouded in the mystery of professional skill or knowledge . . ." *Smith v. State*, 247 Ga. 612, 616 (277 SE2d 678) (1981). Inasmuch as the concept of ordinary wear and tear is within the common knowledge of man and is not shrouded in the mystery of professional skill or knowledge, we agree with the trial court that expert testimony on the subject was not necessary.

We turn to appellants' argument that the agent/witness did not have a sufficient opportunity to form a correct opinion as to the amount of damage attributable to normal wear and tear. The witness testified that he had been in the real estate business for 33 years; had constructed the building at issue; had maintained an office in the building up until three years before the effective date of appellants' lease; and knew the condition of the building at the time it was leased to appellants. "The question of whether a witness has established sufficient opportunity for forming a correct opinion or has stated a proper basis for expressing an opinion is for the trial court. [Cits.] We have found no abuse of discretion by the trial judge." *Dept. of Transp. v. McLaughlin*, 163 Ga. App. 1 (3) (292 SE2d 435) (1982). Through the testimony of their agent, appellees established "the specific acts of waste or damage alleged and the reasonable cost of restoration in relation to the specific injuries shown." *Zeeman Mfg. Co. v. L. R. Sams Co.*, 123 Ga. App. 99, 101 (179 SE2d 552) (1970). The agent's testimony, coupled with documents admitted into evidence, established a "basis upon which the jury could compute the cost of restoration . . . which may be required in repairing or replacing damage, if any, chargeable to the lessee." Id. at 103.

Appellants argue the trial court should have directed a verdict in their favor because appellees did not present evidence that the value of what they received at the end of the tenancy (after repairs were made) was equal to the value of the premises at the inception of the lease, less normal wear and tear over the term of the lease. "[I]t is essential that the [landlord] prove with a reasonable degree of certainty and specificity the condition of the premises . . . both at the inception and at the termination of the tenancy, *or* that he show specific acts of waste or damage the results of which at the end of the term had not been repaired." *Spacemaker, Inc. v. Borochoff Properties*, 112 Ga. App. 512, 514 (145 SE2d 740) (1965). (Emphasis supplied). If it is shown that the tenant's actions resulted in such gross and extensive injuries as to require complete reconstruction of the entire premises or portions thereof, the cost of the complete reconstruction, if reasonable, will suffice as proof of damages. Under the terms of the lease, appellants were required to maintain and repair the building and improvements. Thus, appellants would have been re-

quired to replace the lighting that had been removed; the broken acoustical tile ceiling; the floor tiles; the broken plate glass windows; and the broken air conditioner. *Zeeman Mfg. Co. v. L. R. Sams Co.*, supra, is distinguishable from the case at bar. There, the lessor sought compensation for repairing the roof, a portion of the structure the lessor was contractually obliged to maintain. Since, under the lease, appellants would have had to replace those items so extensively damaged as to require replacement, they were not entitled to a credit of pre-lease depreciation as a mitigation of the replacement costs. The trial court did not err in denying appellants' motion for directed verdict on the proof of damages.

2. Appellants' next three enumerated errors concern appellees' failure to give appellants notice of default and an opportunity to cure that default, as allegedly called for in the lease. As appellees point out, the lease required them to give appellants notice and opportunity to cure as a condition precedent to appellees' *termination* of the lease. There was no contractual requirement to give notice and opportunity to cure when appellees were seeking unpaid rent and compensation for repair of the damaged premises. Enumerations 4 through 6 are without merit.

3. In light of our holding in Division 2, the trial court erred in giving a jury instruction on the issue of the notice and opportunity to cure. However, the charge given was favorable to appellant and, therefore, must be deemed harmless. *Swim Dixie Pool Corp. v. Kraemer*, 157 Ga. App. 748 (2) (278 SE2d 448) (1981). "To obtain a reversal of the judgment of which complaint is made, the burden is upon [appellant] to show not only error but injury. [Cit.]" *Williams v. Kerns*, 153 Ga. App. 259, 268 (265 SE2d 605) (1980).

4. In the next set of enumerated errors, appellants claim a right of setoff. Appellants maintain their right arises out of appellees' failure to give notice of default and opportunity to cure. In light of the holding in Division 2, there was no error in limiting testimony on setoff and in refusing to give requested charges on the subject.

5. Appellants next find error in the trial court's refusal to charge the jury on the doctrine of equitable estoppel and refusal to admit into evidence the document upon which appellants base their estoppel theory. Appellants claim the document, a letter written by appellees' agent to appellants' subtenants putting the subtenants on notice of appellants' intent to enforce strict compliance with the lease, caused the subtenants to vacate the premises. However, abandonment was not the issue in the case at bar. Rather, the repair of the damages inflicted on the property at the hands of the subtenants and the payment of unpaid rent were the issues before the trial court. There was no error in refusing to bring in the issue of equitable estoppel.

6. Appellants sought and were denied a directed verdict on the

ground that the doctrine of res judicata barred appellees' claims. In April 1984, appellees filed a dispossessory proceeding describing appellants' subtenants as tenants holding over. A jury found in favor of the subtenants in June 1984. Appellants now maintain that the claims for damages and unpaid rent filed by appellees in March 1985 were matters which might have been put in issue in the dispossessory action and therefore are now barred. See OCGA § 9-12-40; *Twin Tower &c. Venture v. American Marketing &c. Corp.*, 166 Ga. App. 364 (304 SE2d 493) (1983). In the present action, appellees sought rent for September-December 1984. Inasmuch as that rent was not due and owing in April-June 1984, it was not a matter which might have been put in issue in the dispossessory action. See *Lowenberg v. Ford & Assoc.*, 165 Ga. App. 753 (302 SE2d 433) (1983). See also *Garmon v. Boozer*, 209 Ga. 570 (74 SE2d 865) (1953). Appellants contend that appellees were aware of the claim for damages asserted herein when they filed the dispossessory action. The only evidence to support appellants' assertion is the testimony of the owners' agent that he sent a letter to the subtenant in March 1984, telling the subtenant he was going to have to "fix up" the premises before he returned possession of the property to the owners. Neither that letter nor a description of the repairs contemplated by it is contained in the record. In the absence of that evidence and in light of the subtenant's contractual duty to return the premises to the landlords in as good a condition and state of repair as when first leased to appellants, we cannot interpret the testimony as proof that, in March 1984, appellees' agent was aware of the damages for which appellees sought recompense in this action. Therefore, the denial of the motion for directed verdict based on the doctrine of res judicata was not error.

7. In detailing his efforts to repair the building, the owners' agent testified that one contractor he approached said it was too big a job for him, and two others gave him estimates the witness described as "too high." Appellants' hearsay objection was overruled on the ground the testimony was admissible to explain the witness' conduct.

The witness' statement that the estimates of the two contractors were "too high" was not hearsay; rather it was the opinion of the witness. The witness was available for cross-examination on the subject if appellants had wished to determine upon what he based his opinion. The statement that the repair job was "too big a job for the first contractor," however, was hearsay, and not admissible to explain the witness' conduct since his conduct and motives in obtaining a contractor were irrelevant to the issues on trial. See *Teague v. State*, 252 Ga. 534 (1) (314 SE2d 910) (1984); *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982). However, the admission of that hearsay statement was not harmful error. The witness had previously testified as to the breadth of the repair job when he chronicled the state of disrepair in

which he had found the building after the subtenants had vacated, and the parties had stipulated that appellees had spent $12,415.24 to repair the building.

8. In their final enumerated error, appellants claim the trial court erred in permitting appellees to amend their complaint to assert a claim for lost rent after the trial had commenced. After opening statements and outside the presence of the jury, appellants' counsel stated his objection to the admission of evidence concerning lost rent because that issue was not raised by the pleadings. OCGA § 9-11-15 (b). Appellees' counsel advised the court of his intention to amend the pleadings, and court adjourned for the day. When court reconvened the next day, appellees presented their amendment, to which appellants objected, contending that, since trial had begun, appellees' ability to amend pleadings as a matter of right had come to an end. See *Black v. Lowry*, 159 Ga. App. 57 (1) (282 SE2d 700) (1981). The trial court permitted the amendment over appellants' objection. Appellants now contend that the trial court did not balance possible prejudice to appellants with appellees' reason for delay in amending, and "would not hear arguments" concerning the matter. While appellants voiced objection to the amendment, they only argued that appellees no longer had the unfettered right to amend their pleadings. Appellants did not mention the potential prejudice they foresaw as a result of the amendment, and now would have this court reverse the judgment on the ground that the trial court failed to inquire of appellants the possible prejudice the amendment would cause them. We decline to do so. Appellants had the opportunity to inform the trial court of the prejudice they feared they would suffer as a result of the amendment, and they failed to do so. We will not place upon the trial court the duty to inquire of parties how they are going to be affected by actions taken by the trial court. Moreover, we must point out that appellants had precipitated the amendment by voicing an objection to the introduction of evidence concerning lost rent, contending it was not within the issues made by the pleadings. In such a case, OCGA § 9-11-15 (b) provides that "the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of the evidence would prejudice him in maintaining his . . . defense upon the merits. The court may grant a continuance to enable the objecting party to meet the evidence." Appellants failed to present *argument* of prejudice, much less *evidence* of prejudice, and did not seek a continuance. We will not hear them complain at this point.

*Judgment affirmed. Birdsong, C. J., and Deen, P. J., concur. Beasley, J., disqualified.*

DECIDED MARCH 17, 1987 —
REHEARING DENIED APRIL 1, 1987 — 

*Robert M. Martin, Leslie A. Dent,* for appellants.
*J. Garland Peek,* for appellees.